**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Frank Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CISSE DIOMBERA, on behalf of herself and all others similarly situated,** | |
| **Plaintiff,** | **12 Civ. 8477 (RJS)** |
| **-against-** | |
| **THE RIESE ORGANIZATION, INC., 1552-TGI, INC., TAFT FRIDAY 50TH ST. LLC, 677 LEX TGI, INC., GOURMET MANAGEMENT CORP., 484 8TH OPERATING INC., 47 REALOPP CORP., NATIONAL 42ND STREET REALTY, INC., NO. 604 FIFTH AVENUE RESTAURANT, INC., UNION SQUARE OPERATING, INC.,** | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| **Defendants.** | |

JAN 0 7 2013

Plaintiff Cisse Diombera ("Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      This lawsuit seeks to recover minimum wages, overtime compensation, spread-of-hours pay, call-in pay, misappropriated tips, uniform-related expenses, unlawful deductions and other wages for Plaintiff and her similarly situated co-workers – servers, bussers, runners, bartenders, barbacks, and other "tipped workers" – who work or have worked at T.G.I. Friday's in Manhattan (collectively "Fridays").

2.      Fridays is owned and/or operated by The Riese Organization, Inc. ("Riese") at the following locations:

- 1552 Broadway, New York, New York 10036

- 761 7th Avenue, New York, New York 10019

- 677 Lexington Avenue, New York, New York 10022

- 2 Penn Plaza, New York, New York 10001 (Pennsylvania Station)

- 1 Penn Plaza, 7th Avenue Terminal, New York, New York 10001 (Pennsylvania Station)

- 484 8th Avenue, New York, New York 10001

- 47 Broadway, New York, New York 10004

- 47 East 42nd Street, New York, New York 10017

- 604 5th Avenue, New York, New York 10020

- 34 Union Square East, New York, New York 10003

3.      With over 75 restaurants in Manhattan, including, Friday's, Tim Hortons, Pizza Hut, and KFC, Riese is one of the largest restaurant management companies in New York City. Along with the operation of its well-known franchise brands, Riese has spearheaded its own restaurant concepts such as Tequilaville, Lindy's, and Tad's Steaks, and operates such facilities throughout the New York City area.  Additionally, Riese is one of the largest private employers in New York City employing over 2,000 employees.  Information for all Riese restaurants and a corporate history can be found on the company's website: http://rieserestaurants.com/.

4.      To date, Riese has owned and/or operated 10 Fridays in Manhattan.  In so doing, Riese has maintained control, oversight and direction over Plaintiff and similarly situated employees, including the ability to hire, fire and discipline.  Riese has also applied common employment policies, practices and procedures to all tipped workers at the Manhattan Fridays.

5.      Fridays maintains a policy and practice whereby tipped workers are unlawfully paid less than the full minimum wage rate for the hours they work. *See* **Exhibit A**, Paystubs showing $4.0750 pay rate.   In that regard, Fridays paid tipped workers a reduced, tipped minimum wage rate, even though they did not satisfy the requirements under the Fair Labor Standards Act or New York Labor Law by which they could take advantage of a tip credit.

6.      Fridays maintains a policy and practice whereby tipped workers are required to share tips with salad/dessert preparers who do no interact with customers or provide customer service.

7.      Fridays maintains a policy and practice whereby tipped workers are required to spend a substantial amount of time performing non-tip producing "side work" including, but not limited to, cleaning, polishing, sanitizing, cutting fruit, refilling condiments, replenishing the bar, and rolling silverware.   As a result of this practice, tipped workers spend in excess of twenty percent (20%) of their time at work engaged in a non-tipped capacity.   During these periods, tipped workers are compensated at the tipped minimum wage rate, rather than the full minimum wage rate.   Even though Fridays maintains a timekeeping system capable of tracking multiple job codes for different work assignments, Fridays failed to monitor and/or record the time tipped workers were engaged in non-tip producing "side work."

8.      Fridays maintains a policy and practice whereby tipped workers are encouraged to work off the clock.   For example, Plaintiff was often told to punch out and continue her closing "side work" while waiting for her tip out sheets to be completed by management.   As a result of this practice, Plaintiff was not paid for all of the hours she worked.   Moreover, Fridays' managers were aware that Plaintiff was working off the clock, as tipped workers at Fridays cannot punch in/out of the time keeping system without the assistance of a manager.

9. Fridays maintains a policy and practice whereby tipped workers are required to wear uniforms featuring the T.G.I. Friday's logo. These mandatory uniforms are not laundered or maintained by the company. In fact, the Riese Employee Policy Manual specifically states that: "[E]mployees are responsible to wash and maintain their uniforms at their expense." *See* **Exhibit B**, Riese Restaurants Employee Policy Manual ("Employee Manual"), page F-6.1.

10. Fridays maintains a policy and practice whereby unlawful deductions are made from tipped workers' paychecks. For example, Fridays regularly made deductions from Plaintiff's paychecks, including, but not limited to, "MISC DEDUCTIONS." *See* **Exhibit C**, Paystubs showing "MISC DEDUCTIONS."

11. Plaintiff brings this action on behalf of herself and similarly situated current and former tipped workers who elect to opt-in to this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and other similarly situated employees of their lawfully earned wages.

12. Plaintiff also brings this action on behalf of herself and all similarly situated current and former tipped workers pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

### Plaintiff

**Cisse Diombera**

13. Plaintiff is an adult individual who is a resident of New York, New York.

14. Plaintiff was employed by Defendants as a server and bartender at Fridays from in or around July 2008 until October 5, 2012.

15.     From in or around July 2008 to August 12, 2012, Plaintiff worked as a server and a bartender at the Fridays located at 1552 Broadway, New York, New York 10036.

16.     From in or around August 20, 2012 to in or around October 5, 2012, Plaintiff worked as a bartender at the Fridays located at 761 7th Avenue, New York, New York 10019.

17.     In or around 2009, Plaintiff also worked as a server for two weeks at the Fridays located at 47 Broadway, New York, New York 10004.

18.     Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

19.     A written consent form for Plaintiff was filed with the Class Action Complaint.

**Defendants**

20.     Defendants The Riese Organization, Inc., 1552-TGI, Inc., Taft Friday 50th St. LLC, 677 Lex TGI, Inc., Gourmet Management Corp., 484 8th Operating Inc., 47 Realopp Corp., National 42nd Street Realty, Inc., No. 604 Fifth Avenue Restaurant, Inc., and Union Square Operating, Inc. (collectively "Defendants"), jointly employed Plaintiff and similarly situated employees at all times relevant.  Each Defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

21.     Defendants are part of a single integrated enterprise that jointly employed Plaintiff and similarly situated employees at all times relevant.

22.     Defendants' operations are interrelated and unified.

23.     During all relevant times, Fridays shared a common management and was centrally controlled and/or owned by Defendants.

**The Riese Organization, Inc.**

24.     Together with the other Defendants, Riese has owned and/or operated the Fridays located at the following locations during the relevant period: 1552 Broadway, New York, New York 10036;  761 7th Avenue, New York, New York 10019; 677 Lexington Avenue, New York,

New York 10022; 2 Penn Plaza, New York, New York 10001 (Pennsylvania Station); 1 Penn

Plaza, 7th Avenue Terminal, New York, New York 10001 (Pennsylvania Station); 484 8th

Avenue, New York, New York 10001; 47 Broadway, New York, New York 10004; 47 East

42nd Street, New York, New York 10017; 604 5th Avenue, New York, New York 10020; 34

Union Square East, New York, New York 10003.

25.     Riese is a domestic business corporation organized and existing under the laws of

New York.

26.     Upon information and belief, Riese's principal executive office is located at 560

5th Avenue, New York, New York 10036.

27.     Riese is a covered employer within the meaning of the FLSA and the NYLL, and,

at all times relevant, employed Plaintiff and similarly situated employees.

28.     At all relevant times, Riese has maintained control, oversight, and direction over

Plaintiff and similarly situated employees, including, but not limited to, hiring, firing,

disciplining, timekeeping, payroll and other employment practices that applied to them. *See*

**Exhibit B**, Employee Manual. In fact, pursuant the Employee Manual, Riese requires all new

hires to fill out a standardized "New Hire Packet." *See* Id. at A-6. The Employee Manual also

specifically states that Riese "retains the right to terminate an employee's employment," and that

any manager who terminates an employee "must complete a Separation Notice using the online

form on the [Riese] intranet." Id. at A-1, G-5.2. Moreover, in the event a Riese policy is

violated by an employee, such that a written warning is required, Riese requires that "the

Employee Disciplinary Warning Report on the Company intranet [] be completed." Id. at G-4.1.

29.      Riese applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.  These policies are expressly covered by Riese's Employee Manual. *See* Id. at Sections B (Compensation), F (Workplace Policies), G (Violations-Termination).

30.      Upon information and belief, at all relevant times Riese's annual gross volume of sales made or business done was not less than $500,000.00.

**1552-TGI, Inc.**

31.      Together with the other Defendants, 1552-TGI, Inc. ("1552") owned and/or operated the Fridays located at 1552 Broadway, New York, New York 10036 during the relevant period.

32.      1552 is a domestic business corporation organized and existing under the laws of New York.

33.      Upon information and belief, 1552's principal executive office is located at 560 5th Avenue, New York, New York 10036.

34.      1552 is a corporate entity that appeared on Plaintiff's paychecks and W-2 forms.

35.      1552 is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

36.      At all relevant times, 1552 maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

37.      1552 applied the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

38.     Upon information and belief, at all relevant times, 1552's annual gross volume of sales made or business done was not less than $500,000.00.

**Taft Friday 50th St. LLC**

39.     Together with the other Defendants, Taft Friday 50th St. LLC ("Taft") has owned and/or operated the Fridays located at 761 7th Avenue, New York, New York 10019 during the relevant period.

40.     Taft is a domestic business corporation organized and existing under the laws of New York.

41.     Upon information and belief, Taft's principal executive office is located at 560 5th Avenue, New York, New York 10036.

42.     Taft is an entity that appeared on Plaintiff's paychecks.

43.     Taft is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

44.     At all relevant times, Taft has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

45.     Taft applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

46.     Upon information and belief, at all relevant times, Taft's annual gross volume of sales made or business done was not less than $500,000.00.

**677 Lex TGI, Inc.**

47.     Together with the other Defendants, 677 Lex TGI, Inc. ("677 Lex") has owned and/or operated the Fridays located at 677 Lexington Avenue, New York, New York 10022 during the relevant period.

48.     677 Lex is a domestic business corporation organized and existing under the laws of New York.

49.     Upon information and belief, 677 Lex's principal executive office is located at 560 5th Avenue, New York, New York 10036.

50.     677 Lex is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

51.     At all relevant times, 677 Lex has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

52.     677 Lex applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

53.     Upon information and belief, at all relevant times, 677 Lex's annual gross volume of sales made or business done was not less than $500,000.00.

**Gourmet Management Corp.**

54.     Together with the other Defendants, Gourmet Management Corp. ("Gourmet") has owned and/or operated the two Fridays located in Pennsylvania Station – specifically 2 Penn Plaza, New York, New York 10001 and 1 Penn Plaza, 7th Avenue Terminal, New York, New York 10001 – during the relevant period.

55.     Gourmet is a domestic business corporation organized and existing under the laws of New York.

56.     Upon information and belief, Gourmet's principal executive office is located at 560 5th Avenue, New York, New York 10036.

57.     Gourmet is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

58.     At all relevant times, Gourmet has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

59.     Gourmet applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

60.     Upon information and belief, at all relevant times, Gourmet's annual gross volume of sales made or business done was not less than $500,000.00.

**484 8th Operating Inc.**

61.     Together with the other Defendants, 484 8th Operating Inc. ("484 Operating") has owned and/or operated the Fridays located at 484 8th Avenue, New York, New York 10001 during the relevant period.

62.     484 Operating is a domestic business corporation organized and existing under the laws of New York.

63.     Upon information and belief, 484 Operating's principal executive office is located at 560 5th Avenue, New York, New York 10036.

64.     484 Operating is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

65.     At all relevant times, 484 Operating has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

66.     484 Operating applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

67.     Upon information and belief, at all relevant times, 484 Operating's annual gross volume of sales made or business done was not less than $500,000.00.

**47 Realopp Corp.**

68.     Together with the other Defendants, 47 Realopp Corp. ("47 Realopp") has owned and/or operated the Fridays located at 47 Broadway, New York, New York 10004 during the relevant period.

69.     47 Realopp is a domestic business corporation organized and existing under the laws of New York.

70.     Upon information and belief, 47 Realopp's principal executive office is located at 560 5th Avenue, New York, New York 10036.

71.     47 Realopp is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

72.     At all relevant times, 47 Realopp has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

73.    47 Realopp applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

74.    Upon information and belief, at all relevant times, 47 Realopp's annual gross volume of sales made or business done was not less than $500,000.00.

**National 42nd St. Realty, Inc.**

75.    Together with the other Defendants, National 42nd St. Realty, Inc. ("National") has owned and/or operated the Fridays located at 47 East 42nd Street, New York, New York 10017 during the relevant period.

76.    National is a domestic business corporation organized and existing under the laws of New York.

77.    Upon information and belief, National's principal executive office is located at 560 5th Avenue, New York, New York 10036.

78.    National is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

79.    At all relevant times, National has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

80.    National applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

81.     Upon information and belief, at all relevant times, National's annual gross volume of sales made or business done was not less than $500,000.00.

**No. 604 Fifth Avenue Restaurant, Inc.**

82.     Together with the other Defendants, No. 604 Fifth Avenue Restaurant, Inc. ("No. 604 Fifth") has owned and/or operated the Fridays located at 604 5th Avenue, New York, New York 10020 during the relevant period.

83.     No. 604 Fifth is a domestic business corporation organized and existing under the laws of New York.

84.     Upon information and belief, No. 604 Fifth's principal executive office is located at 560 5th Avenue, New York, New York 10036.

85.     No. 604 Fifth is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

86.     At all relevant times, No.604 Fifth has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

87.     No. 604 Fifth applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

88.     Upon information and belief, at all relevant times, No. 604 Fifth's annual gross volume of sales made or business done was not less than $500,000.00.

**Union Square Operating, Inc.**

89.     Together with the other Defendants, Union Square Operating, Inc. ("Union Square") has owned and/or operated the Fridays located at 34 Union Square East, New York, New York 10003 during the relevant period.

90.     Union Square is a domestic business corporation organized and existing under the laws of New York.

91.     Upon information and belief, Union Square's principal executive office is located at 560 5th Avenue, New York, New York 10036.

92.     Union Square is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

93.     At all relevant times, Union Square has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

94.     Union Square applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, uniform-related expenses, call-in pay, and the making of unlawful deductions.

95.     Upon information and belief, at all relevant times, Union Square's annual gross volume of sales made or business done was not less than $500,000.00.

## JURISDICTION AND VENUE

96.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

97.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

98.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

99.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

100.     Plaintiff brings the First and Second Causes of Action, FLSA claims, on behalf of herself and all similarly situated current and former tipped workers at Fridays in Manhattan, who elect to opt-in to this action (the "FLSA Collective").

101.     Defendants are liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiff and the FLSA Collective.

102.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective were not paid minimum wages for all hours worked and premium overtime compensation for all hours worked beyond 40 per workweek.

103.     All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

104.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

(a)     willfully failing to pay its employees, including Plaintiff and the FLSA Collective, minimum wages for all hours worked and premium overtime wages for hours worked in excess of 40 hours per workweek; and

(b)     willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective, have worked for the benefit of Defendants.

105.    Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to record the hours employees work.

106.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all of the hours they worked.

107.    Defendants are aware or should have been aware that federal law required them to pay employees performing non-exempt duties an overtime premium for hours worked in excess of 40 per workweek.

108.    Plaintiff and the FLSA Collective perform or performed the same primary duties.

109.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

110.    There are many similarly situated current and former tipped workers who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

111.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ACTION ALLEGATIONS

112.    Plaintiff brings the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All persons who work or have worked as tipped workers at Fridays in Manhattan between November 20, 2006 and the date of final judgment in this matter (the "Rule 23 Class").

113.     Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

114.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

115.     Upon information and belief, the size of the Rule 23 Class is at least 50 individuals.  Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

116.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

117.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

     (a)     whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

     (b)     whether Defendants failed to pay Plaintiff and the Rule 23 Class minimum wages for all of the hours they worked;

     (c)     whether Defendants correctly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 hours per workweek;

     (d)     whether Defendants failed to provide Plaintiff and the Rule 23 Class spread-of-hours pay when the length of their workday was greater than 10 hours

     (e)     whether Defendants failed to pay Plaintiff and the Rule 23 Class call-in pay on days they reported for duty by request or permission of Defendants, but were not permitted by Defendants to work the full length of their shift;

(f)   whether Defendants misappropriated tips from Plaintiff and the Rule 23 Class by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiff and the Rule 23 Class, and which customers reasonably believed to be gratuities for Plaintiff and the Rule 23 Class;

(g)   whether Defendants distributed or retained a portion of the tips paid by customers to workers who are not entitled to receive tips under the NYLL;

(h)   whether Defendants failed to pay Plaintiff and the Rule 23 Class for uniform-related expenses;

(i)   whether Defendants made deductions from wages paid to Plaintiff and the Rule 23 Class that were not authorized or required by law;

(j)   whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Rule 23 Class, and other records required by the NYLL;

(k)   whether Defendants failed to furnish Plaintiff and the Rule 23 Class with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, as required by the NYLL;

(l)   whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(m)   the nature and extent of class-wide injury and the measure of damages for those injuries.

118.   The claims of Plaintiff are typical of the claims of the Rule 23 Class she seeks to represent.  Plaintiff and all of the Rule 23 Class members work, or have worked, for Defendants as tipped workers at Fridays.  Plaintiff and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including to be paid for all hours worked, to be paid overtime wages, to be paid spread-of-hours pay, to be paid tips, to be paid for uniform related expenses, to be paid call-in pay, and to not have unlawful deductions taken from their wages.  Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

119.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Class. Plaintiff understands that as class representative, she assumes a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiff recognizes that as class representative, she must represent and consider the interests of the class just as she would represent and consider her own interests. Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over the class. Plaintiff recognizes that any resolution of a class action must be in the best interest of the class. Plaintiff understands that in order to provide adequate representation, she must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial. Plaintiff has retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiff and the Rule 23 members.

120.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual Plaintiff lacks the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

121.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## PLAINTIFF'S FACTUAL ALLEGATIONS

122.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Cisse Diombera**

123.     Defendants did not pay Plaintiff the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

124.     Throughout the duration of her employment at Fridays, Plaintiff received weekly paychecks from Defendants that did not properly record or compensate her for all the hours that she worked.

125.     At all times relevant, Defendants compensated Plaintiff using the tip credit minimum wage rate, rather than the full minimum wage rate.

126.     Defendants did not provide Plaintiff with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to Plaintiff's wages.

127.     Defendants unlawfully required Plaintiff to share tips with salad/dessert preparers, employees in positions that are not entitled to tips under the FLSA and/or the NYLL.

128.     Defendants required Plaintiff to perform a substantial amount of non-tipped "side work" in excess of twenty percent (20%) of her time at work.  During these periods, Defendants compensated Plaintiff at the tipped minimum wage rate rather than the full hourly minimum wage rate.

129.     Defendants frequently required Plaintiff to arrive at work before the start of her scheduled shift and begin "side work" while waiting for the manager to clock her in.  At the end of her shift, Defendants often required Plaintiff to clock out and continue closing "side work" while Managers ran tip share reports and distributed tips to employees.  During these periods, Defendants did not compensate Plaintiff for this time.

130.     Defendants suffered or permitted Plaintiff to work over 40 hours per week as a server and bartender, up to a maximum of approximately 50 hours per week.  Defendants did not properly compensate Plaintiff for all of the hours she worked in excess of 40 per workweek.

131.     The overtime premiums Defendants paid Plaintiff for hours worked in excess of 40 per workweek were not calculated at 1.5 times the full minimum wage rate.

132.     Defendants did not pay Plaintiff one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

133.     Approximately one day each week, Defendants prohibited Plaintiff from working the full length of her scheduled shift.  Defendants did not pay Plaintiff call-in pay on days she reported for work by request or permission of Defendants, but was prohibited by Defendants from working the full length of her shift.

134.     Defendants required Plaintiff to wear a uniform consisting of shirt with the Friday's logo, black slacks, black shoes, and black socks.  Defendants did not launder and/or maintain Plaintiff's mandatory uniform, and failed to pay Plaintiff for required weekly uniform-maintenance amount in addition to the required minimum wage.

135.     Defendants regularly made deductions from Plaintiff's paychecks, including, but not limited to, "MISC DEDUCTIONS."  *See* **Exhibit A**, Paystubs showing "MISC DEDUCTIONS."  These deductions were not authorized or required by law, and were not expressly authorized in writing by Plaintiff or for the benefit of Plaintiff.

136.     Defendants did not keep accurate records of wages or tips earned, or of hours worked by Plaintiff.

137.    Defendants failed to furnish Plaintiff with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages

138.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

139.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

140.    At all times relevant, Plaintiff and the members of the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

141.    At all times relevant, Plaintiff and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 201 *et seq.*

142.    At all times relevant, Defendants have been employers of Plaintiff and the members of the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

143.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of the FLSA Collective.

144.    Defendants failed to pay Plaintiff and the members of the FLSA Collective the minimum wages to which they are entitled under the FLSA.

145.    Defendants were required to pay directly to Plaintiff and the members of the FLSA Collective the full federal minimum wage rate for all hours worked.

146.     Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiff and the FLSA Collective of the provisions of subsection 203(m) of the FLSA.

147.     Defendants required Plaintiff and the members of the FLSA Collective to perform a substantial amount of non-tipped "side work" in excess of twenty percent of their time at work. During these periods, Defendants compensated Plaintiff and the members of the FLSA Collective at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq*.

148.     Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.   Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the FLSA Collective.

149.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq*.

150.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the members of the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages

151.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

152.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of the FLSA Collective.

153.    Defendants have failed to pay Plaintiff and the members of the FLSA Collective overtime wages for all of the hours that they worked in excess of 40 hours in a workweek.

154.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.   Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the FLSA Collective.

155.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

156.    As a result of Defendants' violations of the FLSA, Plaintiff and the members of the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wage

157.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

158.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

159.    At all times relevant, Plaintiff and the members of the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the members of the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

160.    At all times relevant, Plaintiff and the members of the Rule 23 Class have been covered by the NYLL.

161.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiff and the members of the Rule 23 Class.

162.    Defendants failed to pay Plaintiff and the members of the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

163.    Defendants were required to pay Plaintiff and the members of the Rule 23 Class the full minimum wage at a rate of (a) $6.75 per hour for all hours worked from November 20, 2006 through December 31, 2006; (b) $7.15 per hour for all hours worked from January 1, 2007 through July 23, 2009; and (c) $7.25 per hour for all hours worked from July 24, 2009 through the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

164.    Defendants failed to furnish with every payment of wages to Plaintiff and the members of the Rule 23 Class a statement listing hours worked, rates paid, gross wages, and tip allowance claimed as part of their minimum hourly wage rate, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

165.    Defendants required Plaintiff and the members of the Rule 23 Class to perform a substantial amount of non-tipped "side work" in excess of twenty percent of their time at work. During these periods, Defendants compensated Plaintiff and the members of the Rule 23 Class at the tipped minimum wage rate rather than the full hourly minimum wage rate, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

166.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

167.    Due to Defendants' willful violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime

168.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

169.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the members of the Rule 23 Class.

170.    Defendants failed to pay Plaintiff and the members of the Rule 23 Class the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

171.    Defendants failed to pay Plaintiff and the members of the Rule 23 Class 1.5 times the full minimum wage rate for hours worked in excess of 40 per workweek.

172.    Defendants have failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the members of the Rule 23 Class.

173.    Through their knowing or intentional failure to pay Plaintiff and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

174.    Due to Defendants' willful violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
### New York Labor Law – Spread-of-Hours Pay

175.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

176.    Defendants failed to pay Plaintiff and the members of the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

177.    Through their knowing or intentional failure to pay Plaintiff and the members of the Rule 23 Class spread of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

178.    Due to Defendants' willful violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
### New York Labor Law – Call-In Pay

179.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

180.    Plaintiff and the members of the Rule 23 Class who reported for duty by request of permission of Defendants, but were not permitted by Defendants to work the full length of their shift, whether or not assigned to actual work, were not compensated at the applicable wage rate: (1) for at least three hours for one shift or the number of hours in the regularly scheduled shift, whichever is less; (2) for at least six hours for two shifts totaling six hours or less, or the number of hours in the regularly scheduled shift, whichever is less; and (3) for at least eight hours for three shifts totaling eight hours or less or the number of hours in the regularly scheduled shift, whichever is less.

181.    Through their knowing or intentional failure to pay Plaintiff and the members of the Rule 23 Class call-in pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

182.     Due to Defendants' willful violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid call-in wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SEVENTH CAUSE OF ACTION
### New York Labor Law –Tip Misappropriation

183.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

184.     At all times relevant, Plaintiff and the members of the Rule 23 Class have been employees within the meaning of NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

185.     At all times relevant, each Defendant has been an employer within the meaning of the NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

186.     The wage payment provisions of Article 6 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiff and the members of the Rule 23 Class.

187.     Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff and the members of the Rule 23 Class in violation of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

188.     Defendants unlawfully retained part of the gratuities earned by Plaintiff and the members of the Rule 23 Class in violation of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

189.     Defendants required Plaintiff and the members of the Rule 23 Class to share part of the gratuities they received with employees other than waiters, servers, bussers, or similar employees, in violation of NYLL, Article 6 § 196-d and the supporting New York State Department of Labor Regulations.

190.     By Defendants' knowing or intentional demand for, acceptance of, and/or retention of part of the gratuities received by Plaintiff and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

191.     Due to Defendants' willful violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### EIGHTH CAUSE OF ACTION
**New York Labor Law – Uniform Violations**

192.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

193.     Defendants required Plaintiff and the members of the Rule 23 Class to wear a uniform consisting of shirt with the Friday's logo, black slacks, black shoes, and black socks.

194.     Defendants failed to launder and/or maintain the required uniforms for Plaintiffs and the members of the Rule 23 Class, and failed to pay them the required weekly amount in addition to the required minimum wage.

195.     By Defendants' failure to pay Plaintiff and the members of the Rule 23 Class for the maintenance of required uniforms, Defendants have willfully violated the NYLL, and the supporting New York State Department of Labor Regulations.

196.     Due to Defendants' willful violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants the costs of maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## NINTH CAUSE OF ACTION
### New York Labor Law – Unlawful Deductions From Wages

197.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

198.     Defendants made unlawful deductions from the wages of Plaintiff and the members of the Rule 23 Class.  These deductions included, but were not limited to, "MISC DEDUCTIONS," as indicated on Plaintiff's paychecks.

199.     The deductions made from the wages of Plaintiff and the members of the Rule 23 Class were not authorized or required by law.

200.     The deductions made from the wages of Plaintiff and the members of the Rule 23 Class were not expressly authorized in writing by Plaintiff and the Rule 23 Class, and were not for the benefit of Plaintiff and the Rule 23 Class.

201.     Through their knowing or intentional efforts to permit unauthorized deductions from the wages of Plaintiff and the members of the Rule 23 Class, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

202.     Due to Defendants' willful violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## TENTH CAUSE OF ACTION
### New York Labor Law – Recordkeeping Violations

203.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

204.     Defendants have willfully failed to supply Plaintiff and the members of the Rule 23 Class notice as required by NYLL, Article 6, § 195, in English or in the language identified by Plaintiff and the members of the Rule 23 Class as their primary language, containing Plaintiff's and the members of the Rule 23 Class' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

205.     Defendants have willfully failed to supply Plaintiff and the members of the Rule 23 Class with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

206.     Through their knowing or intentional failure to provide Plaintiff and the members of the Rule 23 Class with the notices and statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

207.     Due to Defendants' willful violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants one hundred dollars for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.     That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all tipped workers who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at Fridays in Manhattan.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.     Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

F.      Unpaid minimum wages, overtime pay, spread-of-hours pay, call-in pay, misappropriated tips, uniform related expenses, unlawful deductions, and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

G.      One hundred dollars for each workweek that the violations of NYLL Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars, as provided for by NYLL Article 6 § 198(1)-d;

H.      Prejudgment and post-judgment interest;

I.      An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

J.      Reasonable attorneys' fees and costs of the action; and

K.      Such other relief as this Court shall deem just and proper.


Dated:       New York, New York
             January 7, 2013


                                    Respectfully submitted,


                                    Eric J. Gitig

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Putative Class*

# EXHIBIT A



YOU ARE EMPLOYED HERE      THIS IS YOUR S.S. #  IS IT CORRECT?

**STORE # 525**

**1552-TGI, INC.**

**05/06/10**

**CHECK # 690112**

| PERIOD ENDING | RATE | HOURS | | | CASH EARNINGS | TIPS | ADJUSTMENTS | GROSS | |
| | | REGULAR | OVER-TIME | VAC SICK HOL | | | | MEALS | CASH |
|---|---|---|---|---|---|---|---|---|---|
| 05/02 | 4.0750 | 30.25 | | | 123.27 | 332.75 | | 17.39 | 123.27 |

| M OR S | NO OF DEP | DEDUCTIONS | | | | | | CODES MISCELLANEOUS | | | | |
| | | FICA | FEDERAL WITH. TAX | STATE WITH I TAX | N.Y.C. W. TAX | DIS. | YNKRS. WITH TAX | LOANS | 401 K | UNION FEES | LEVY | MISC. DED. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S | 00 | 34.89 | 46.74 | 15.01 | 9.68 | .60 | | | | | | |

EMPLOYEE'S PAY STATEMENT - NOTE - RETAIN THIS PERMANENTLY IT IS A RECORD OF YOUR EARNINGS AND TAX DEDUCTIONS AS REPORTED TO THE FEDERAL, STATE AND LOCAL GOVERNMENTS. GOTHAM DISBURSEMENTS INC.

M - MARRIED
S - SINGLE

**YETUNDE O AKINMURELE**
**NET AMOUNT = $*******16.35**

# EXHIBIT B



# Full Service
### Employee Policy Manual

# WELCOME TO RIESE RESTAURANTS

As the President of Riese Restaurants, I'd like to welcome you to our Company.

Riese Restaurants is a restaurant company with over 70 years of experience in New York City.  We pride ourselves on providing good food and good service to New Yorkers and tourists alike.  In the course of our many years, we have learned that our employees are ambassadors to our customers and are, therefore, one of our most valuable assets.

In order to assist you in achieving success in your new job, the following pages have been compiled to allow you to become familiar with our policies and procedures.

A successful partnership between employer and employee depends on good communication.  If you have any questions regarding any policy, feel free to speak with your supervisor or the restaurant District Manager.

We look forward to a long and mutually successful relationship.

Sincerely,

Gary Trimarchi,
President and Chief Operating Officer

*Riese Restaurants is a trade name used to refer to a group of businesses with affiliated ownership.  The employer's name depends on the location of employment.  The employer's name will be reflected on the Pay Rate Acknowledgment Form, pay stub and W2.*

# EMPLOYEE POLICY MANUAL
# FULL SERVICE  EMPLOYEES

| Policy # | Policy | Dated | | Policy # | |
|---|---|---|---|---|---|
| (A) | Employment | | | (F) | Workplac |
| A-1 | Employment at Will | October 2011 | | F-1 | El |
| A-2 | Employment of Minors | October 2011 | | F-2 | Er |
| A-3 | Equal Employment Opportunity | October 2011 | | F-3 | Sn |
| A-4 | Immigration/Work Authorization | October 2011 | | F-4 | Sc |
| A-5 | Minimum Wage | October 2011 | | F-5 | Gu |
| A-6 | New Hires | October 2011 | | F-6 | Ur |
| A-7 | Rehire of Former Employees | October 2011 | | F-7 | Al |
| | | | | F-8 | Ti |
| | | | | F-9 | Ti |
| (B) | Compensation | | | | |
| B-1 | Compensation Basis | October 2011 | | (G) | Violations |
| B-2 | Direct Deposit | October 2011 | | G-1 | An |
| B-3 | Employee Meal Periods | October 2011 | | G-2 | Dis |
| B-4 | Payroll Check Distribution and Cashing | October 2011 | | G-3 | Dr |
| B-5 | Work Week and Payday | October 2011 | | G-4 | Em |
| | | | | G-5 | Ter |
| (C) | Benefit Pay | | | (H) | Other |
| C-1 | Bereavement Leave | October 2011 | | H-1 | Ac |
| C-2 | Vacation Pay | October 2011 | | H-2 | Em |
| C-3 | Holiday Pay | October 2011 | | H-3 | Ch |
| C-4 | Sick Pay | October 2011 | | H-4 | Co |
| (D) | Time Off | | | | |
| D-1 | Absenteeism | October 2011 | | | |
| D-2 | Family Medical Leave Request Form | October 2011 | | | |
| D-3 | Jury Duty | October 2011 | | | |
| D-4 | Leave of Absence General | | | | |
| (E) | Benefits | | | | |
| E-1 | 401k Plan | October 2011 | | | |
| E-2 | Long Term Disability | October 2011 | | | |
| E-3 | Short Term Disability | October 2011 | | | |

# EMPLOYEE POLICY MANUAL
# FULL SERVICE EMPLOYEES

| Policy # | Policy | Dated |
|---|---|---|
| **(F)** | **Workplace Policies** | |
| F-1 | Electronic and Telephone Usage | October 2011 |
| F-2 | Employee Accident Reporting | October 2011 |
| F-3 | Smoke Free Workplace | October 2011 |
| F-4 | Solicitation and Organization of Employees | October 2011 |
| F-5 | Guest Incident Reporting | October 2011 |
| F-6 | Uniforms and Employee Appearance | October 2011 |
| F-7 | Alcohol Awareness | October 2011 |
| F-8 | Tip Reporting | October 2011 |
| F-9 | Tip Sharing | October 2011 |
| | | |
| **(G)** | **Violations-Termination** | |
| G-1 | Anti-Harassment and Anti-Discrimination | October 2011 |
| G-2 | Dispute Resolution | October 2011 |
| G-3 | Drugs and Alcohol | October 2011 |
| G-4 | Employee Disciplinary Warnings | October 2011 |
| G-5 | Termination | October 2011 |
| | | |
| **(H)** | **Other** | |
| H-1 | Access to Personnel Files | October 2011 |
| H-2 | Employment Verification | October 2011 |
| H-3 | Check Acceptance | October 2011 |
| H-4 | Counterfeit Bills | October 2011 |

# EMPLOYMENT



# EMPLOYEE POLICY MANUAL

**POLICY:**     **Employment at Will**

**DATE:**       **October 2011**

_____

All employees are employees at will and, as such, are free to resign at any time without reason. The Company, likewise, retains the right to terminate an employee's employment at any time with or without reason or notice as long as such termination is not in violation of state or federal law.

Nothing contained in this manual or any other document provided to the employee is intended to be, nor should it be, construed as a guarantee that employment or any benefit will be continued for any period of time.

Any salary figures provided to an employee in annual or monthly terms are stated for the sake of convenience or to facilitate comparisons and are not intended and do not create an employment contract for any specific period of time.

No contract can be made with regard to employment or working conditions without the written approval of the President of the Company.

A-1

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Employment of Minors**

**DATE:**   **October 2011**

---

The Company complies with federal and state minimum age laws for employment. We do not employ any person under 18 years of age.

Before an offer of employment is made, it is the General Manager's responsibility to verify that all employees are at least 18 years of age.

A-2

# EMPLOYEE POLICY MANUAL

**POLICY:**    **Equal Employment Opportunity**

**DATE:**    **October 2011**

Except where same may be a bona fide occupational qualification, the Company will recruit, hire, train and promote all persons without regard to race, color, sex, sexual preference, national origin, marital status, political belief, religion, physical or mental disability or history of mental disorder.

We will base all decisions on employment so as to further the principle of equal employment opportunity.

We will ensure that promotion decisions are in accordance with the principles of equal employment opportunity by imposing only valid requirements for promotional opportunities. We further state that all personnel actions such as compensation, benefits, transfers, layoffs, returns from layoffs and Company sponsored training will be administered without regard to race, color, sex, sexual preference, national origin, marital status, political belief, religion, physical or mental disability or history of mental disorder.

A-3

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Immigration/Work Authorization**

**DATE:**       **October 2011**

---

It is the policy of the Company to employ only those individuals entitled to work in the United States. It is against our policy to discriminate because of an individual's national origin, citizenship or intent to become a United States citizen.

All employees must have authorization to work in the United States. They will be required to complete a Department of Homeland Security Form I-9 and provide proof of work eligibility. All offers of employment will be conditioned on providing proof of work eligibility and identification.

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Minimum Wage**

**DATE:**       **October 2011**

---

In accordance with state and federal law, all employees will be paid at least the hourly minimum wage. If there is a difference between state minimum wage and federal minimum wage, the higher of the two will be paid.

Minimum wage laws allow the Company to take a credit against minimum wage for all tipped employees. Tipped employees normally include servers, bartenders, bussers and runners.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **New Hires**

**DATE:**   **October 2011**

---

Upon employment, all employees are required to fill out a New Hire Packet.

The New Hire Packet includes, but is not limited, to the following:

Application
Security Form
Form I-9
W4
Acknowledgement of Pay Rate and Pay Day
EEOC Compliance Questionnaire
Direct Deposit Authorization
Tax Credit  Forms

All forms must be fully completed and signed by the employee and the manager, where applicable.

Providing false information on any new hire forms may be grounds for dismissal.

Upon completion of the new hire forms, all new hires must visit the Security Department for security clearance.  As part of the security clearance, the employee's photograph and fingerprints will be taken.

If an employee is permanently transferred from one corporate restaurant to another, the employee must clear security again.

An email will be sent to the restaurant informing the manager that an employee has cleared security.  A copy of the employee's photograph is attached to the email.  When the employee reports for his/her first day of work, the photograph must be matched with the individual.

All new hire forms will be saved in the employee's personnel file.

A-6

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Rehire of Former Employees**

**DATE:**   **October 2011**

---

The Company wants to ensure that job applicants ultimately hired are those with the best possibility of successful performance once hired.

Former employees should not be rehired if past employment was not satisfactory as indicated by their former supervisor in the termination process.

Any employees dismissed for any reasons listed below are ineligible for rehire.

Falsification of documents
a. Falsifying employee's own or other employee's information on employment applications, time sheets or work records.

Misconduct
a. Mistreatment, harassment or discrimination against fellow employees or guests
b. Fighting or horseplay
c. Abusive or threatening language to fellow employees or guests
d. Unauthorized use of confidential information

Damages
a. Malicious damage to or gross negligence of Company property

Theft
a. Theft of fellow employee's, employer's or guest's property after sufficient proof

Gambling
a. Conducting unlawful games of chance on the Company's premises

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Rehire of Former Employees**

**DATE:**   **October 2011**

---

Possession of the following on the Company's premises
a.  Firearms, knives or weapons of any sort
b.  Drugs (except those prescribed to the employee for health reasons)
c.  Alcoholic beverages for personal consumption

If an employee's termination notice reflects that the employee may not be rehired for reasons <u>other than those listed above,</u> the district manager may make a determination to approve a rehire.

If a former employee is rehired, his/her seniority date will be the date of the most recent hiring and all new and future employment records shall be maintained in the employee's personnel file.

If rehired, the starting wages will be based on the position for which he/she is being considered, regardless of previous position or wage.

All rehires, <u>regardless of the length of time between employment dates,</u> must go through security clearance.

A-7.2

# COMPENSATION

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Compensation Basis**

**DATE:**       **October 2011**

Most employees are paid on an hourly basis for the hours worked.  In accordance with federal and state law, overtime is paid at the rate of 1.5 times the base rate for any hours worked over 40 hours per week.

Any benefit hours paid during a week will be deducted from total hours before calculating overtime pay.  For example, if an employee works 45 total hours for a week, the employee will be paid 5 hours overtime.  However, if an employee's 45 hours for a week includes 8 hours of sick time, the employee will be paid 37 hours of regular pay and 8 hours of sick pay.  No overtime is paid for the week.

Certain designated employees are paid on a salary basis and are exempt from overtime pay.  Exempt employees include executives, managers, assistant managers and professionals.

# EMPLOYEE POLICY MANUAL

**POLICY:**    **Direct Deposit**

**DATE:**    **October 2011**

As a convenience to employees, the Company offers a direct deposit program for payroll. This allows employees to receive their net pay directly into their checking and/or savings account as immediately available funds. As an added benefit, direct deposit payments are usually available in the employee's account on Thursday each week, the day before paychecks are distributed.

A direct deposit enrollment form is included in the new hire packet. A copy of a voided check or savings account deposit slip is required to be submitted with the enrollment form.

If enrollment is desired after the new hire process, an enrollment form can be obtained from the New Hire Packet on the intranet.

If an employee closes an account being used for direct deposit, it is his/her responsibility to inform the payroll department to make the change. If notice is not received prior to the processing of payroll, the transfer will be made to the wrong account and will be returned by the receiving bank. If a new account is to be used, new direct deposit forms should be completed and sent to the payroll department as soon as possible.

If an employee decides to terminate direct deposit participation, a written notice must be sent to the payroll department so that a paycheck can be processed.

# EMPLOYEE POLICY MANUAL

**POLICY:**    **Employee Meal Periods**

**DATE:**    **October 2011**

---

The Company follows NYS Labor Law regarding meal periods.  An employee who works at least six hours that cover the noonday meal period of 11 am to 2 pm is to be allowed a 30 minute meal break.

Any employee who works a shift starting before 11 am and continuing later than 7 pm must be allowed an additional meal period of at least 20 minutes.

Any employee working more than 6 hours including the hours between 1 pm and 6 am must be allowed a 45 minutes meal period midway between the start and end of the shift.

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Payroll Check Distribution and Cashing**

**DATE:**        **October 2011**

---

Employee pay checks are available for distribution each Friday.  The employee must sign a check distribution log upon receipt of his/her check.  The distribution log is to be maintained at the restaurant.

Employees may cash payroll checks at a location designated by the Company.  Two forms of ID are usually required, one of which must be a photo ID.

Payroll checks may not be cashed in the restaurant.

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Work Week and Payday**

**DATE:**       **October 2011**

The Company's work week begins on Monday and ends on Sunday.  Payroll checks are distributed on the following Friday.

B-5

# BENEFIT PAY

# EMPLOYEE POLICY MANUAL

**POLICY:**    **Bereavement Leave**

**DATE:**    **October 2011**

We recognize that a time of bereavement is a very difficult one for an employee. In this regard, every effort will be made to insure that the employee is able to attend to family matters. However, the Company must have a guideline as to the amount of paid time away from the job.

Absence due to a death in an employee's immediate family (mother, father, sister, brother, spouse, domestic partner, child, spouse's parent or domestic partner's parent, stepparent, stepbrother or stepsister) will be excused and paid up to a maximum of three days. In addition, the duration of a leave will depend on such factors as distance to be traveled and responsibility of the individual. This is a matter for supervisory decision. An employee may use available paid leave for additional time as necessary.

Absence of up to one day to attend a funeral of a grandparent, grandparent-in-law, brother-in-law or sister-in-law will be excused and paid.

Time off for other funerals will be considered on an individual basis. As a general rule, vested vacation, sick days or a personal day may be used for this purpose.

The Company may request verification of the absence (e.g. death certificate, newspaper notice) prior to granting bereavement pay.

Employee must have completed 90 days of employment to be eligible for this benefit

For the purpose of this policy, a domestic partner is defined as one who is financially and emotionally interdependent in a manner commonly presumed of a spouse.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Vacation Pay**

**DATE:**   **October 2011**

The Company recognizes that employees benefit from time spent away from the job. As such, the Company offers paid vacation after one year of active employment.  The vacation schedule is as follows:

<u>After one year of employment</u> – one week paid vacation to be taken in year two.

<u>After two years of employment</u> – two weeks paid vacation accruing on a monthly basis. Accrued time may be taken as it is earned and must be taken or paid by the end of each date of hire anniversary year.

<u>After five years of employment</u> – three weeks paid vacation accruing on a monthly basis. Accrued time may be taken as it is earned and must be taken or paid by the end of each date of hire anniversary year.

Vacation pay is earned based on the employee's anniversary date.

**The employee is responsible to request unused vacation pay no later than 30 days after the employee's anniversary date (Payout Period). Vacation time cannot be carried from year to year.  Any unused or unpaid time at the end of the Payout Period is lost.  Any exception to this policy must have the written approval of the President of the Company prior to the end of the Payout Period.   It is the employee's responsibility to keep track of vacation time available.  A request may be made at any time to the Payroll Department for verification of time remaining.**

Part time employees will receive vacation pay based on the average number of hours worked per week during the 52 weeks of the previous anniversary year.

Upon voluntary termination, vested and accrued vacation will be paid to the employee.

Upon involuntary termination (other than layoff), no accrued vacation will be paid.

C-2

# EMPLOYEE POLICY MANUAL

**POLICY:**    **Holiday Pay**

**DATE:**    **October 2011**

It is the policy of the Company to recognize certain designated days throughout the year as paid holidays. Under normal circumstances, the Company will observe the following:

- o    New Year's Day
- o    Memorial Day
- o    July 4th
- o    Labor Day
- o    Thanksgiving Day
- o    Christmas Day

An employee must be actively employed for 90 days prior to the holiday to be eligible for holiday pay.

An employee must have worked the last scheduled day prior to the holiday and the first scheduled day following the holiday in order to receive holiday pay. This requirement is waived if the employee's absence was approved in advance (e.g. vacation, jury duty). If the employee calls in sick either the day before or after the holiday, he or she will not receive holiday pay, unless a doctor's note is provided confirming the employee's illness.

Employees will be paid their normally scheduled hours for the day on which the holiday occurs. Anyone who is required to work on the holiday will be paid time and a half of their normal hourly rate.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Sick Pay**

**DATE:**    **October 2011**

---

The Company recognizes that employees may be unable to work because of illness, injury or the need to secure medical treatment.  The Company offers employees paid time off in these instances.

Employees must adhere to department requirements with regard to call in and notification.  In general, sick day calls must be made to the employee's supervisor and not to a fellow employee.

Employees who have been actively employed for 1 year accrue sick days as follows:

Year 1 = 3 days
Years 2-4 = 4 days
Thereafter = 5 days

The first year is prorated the based on date of hire.  Sick pay each year thereafter is based on the calendar year.

Unused sick pay is not paid upon termination whether voluntary or involuntary.

# TIME OFF

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Absenteeism**

**DATE:**       **October 2011**

All employees are expected to arrive on time, ready to work, every day.  If you are unable to arrive at work on time or must be absent for an entire day, you must contact your supervisor as soon as possible.

Check with your supervisor to find out how far in advance you are required to call in before your start time.

When you call in by the prescribed time, you must speak with your supervisor.  Leaving a message with a co-worker is not acceptable.

Excessive absenteeism or tardiness will result in discipline that may include termination. The standard of what is excessive is determined by the needs of your particular department.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Family Medical Leave of Absence**

**DATE:**   **October 2011**

---

In accordance with federal law, unpaid family medical leave is provided under certain circumstances to employees in the event an extended leave of absence is required.

The following Department of Labor notice describes employee and employer rights and responsibilities under the law.

The Company requires that the employee use any accrued paid leave such as vacation or sick pay before using family medical leave.

The twelve month period will be measured based on a calendar year.

The FMLA form can be found on the company intranet.

# EMPLOYEE RIGHTS AND RESPONSIBILITIES
## UNDER THE FAMILY AND MEDICAL LEAVE ACT

### Basic Leave Entitlement

FMLA requires covered employers to provide up to 12 weeks of unpaid, job-protected leave to eligible employees for the following reasons:

- For incapacity due to pregnancy, prenatal medical care or child birth;
- To care for the employee's child after birth, or placement for adoption or foster care;
- To care for the employee's spouse, son or daughter, or parent, who has a serious health condition; or
- For a serious health condition that makes the employee unable to perform the employee's job.

### Military Family Leave Entitlements

Eligible employees with a spouse, son, daughter, or parent on active duty or call to active duty status in the National Guard or Reserves in support of a contingency operation may use their 12-week leave entitlement to address certain qualifying exigencies. Qualifying exigencies may include attending certain military events, arranging for alternative childcare, addressing certain financial and legal arrangements, attending certain counseling sessions, and attending post-deployment reintegration briefings.

FMLA also includes a special leave entitlement that permits eligible employees to take up to 26 weeks of leave to care for a covered servicemember during a single 12-month period. A covered servicemember is a current member of the Armed Forces, including a member of the National Guard or Reserves, who has a serious injury or illness incurred in the line of duty on active duty that may render the servicemember medically unfit to perform his or her duties for which the servicemember is undergoing medical treatment, recuperation, or therapy; or is in outpatient status; or is on the temporary disability retired list.

### Benefits and Protections

During FMLA leave, the employer must maintain the employee's health coverage under any "group health plan" on the same terms as if the employee had continued to work. Upon return from FMLA leave, most employees must be restored to their original or equivalent positions with equivalent pay, benefits, and other employment terms.

Use of FMLA leave cannot result in the loss of any employment benefit that accrued prior to the start of an employee's leave.

### Eligibility Requirements

Employees are eligible if they have worked for a covered employer for at least one year, for 1,250 hours over the previous 12 months, and if at least 50 employees are employed by the employer within 75 miles.

### Definition of Serious Health Condition

A serious health condition is an illness, injury, impairment, or physical or mental condition that involves either an overnight stay in a medical care facility, or continuing treatment by a health care provider for a condition that either prevents the employee from performing the functions of the employee's job, or prevents the qualified family member from participating in school or other daily activities.

Subject to certain conditions, the continuing treatment requirement may be met by a period of incapacity of more than 3 consecutive calendar days combined with at least two visits to a health care provider or one visit and a regimen of continuing treatment, or incapacity due to pregnancy, or incapacity due to a chronic condition. Other conditions may meet the definition of continuing treatment.

### Use of Leave

An employee does not need to use this leave entitlement in one block. Leave can be taken intermittently or on a reduced leave schedule when medically necessary. Employees must make reasonable efforts to schedule leave for planned medical treatment so as not to unduly disrupt the employer's operations. Leave due to qualifying exigencies may also be taken on an intermittent basis.

### Substitution of Paid Leave for Unpaid Leave

Employees may choose or employers may require use of accrued paid leave while taking FMLA leave. In order to use paid leave for FMLA leave, employees must comply with the employer's normal paid leave policies.

### Employee Responsibilities

Employees must provide 30 days advance notice of the need to take FMLA leave when the need is foreseeable. When 30 days notice is not possible, the employee must provide notice as soon as practicable and generally must comply with an employer's normal call-in procedures.

Employees must provide sufficient information for the employer to determine if the leave may qualify for FMLA protection and the anticipated timing and duration of the leave. Sufficient information may include that the employee is unable to perform job functions, the family member is unable to perform daily activities, the need for hospitalization or continuing treatment by a health care provider, or circumstances supporting the need for military family leave. Employees also must inform the employer if the requested leave is for a reason for which FMLA leave was previously taken or certified. Employees also may be required to provide a certification and periodic recertification supporting the need for leave.

### Employer Responsibilities

Covered employers must inform employees requesting leave whether they are eligible under FMLA. If they are, the notice must specify any additional information required as well as the employees' rights and responsibilities. If they are not eligible, the employer must provide a reason for the ineligibility.

Covered employers must inform employees if leave will be designated as FMLA-protected and the amount of leave counted against the employee's leave entitlement. If the employer determines that the leave is not FMLA-protected, the employer must notify the employee.

### Unlawful Acts by Employers

FMLA makes it unlawful for any employer to:

- Interfere with, restrain, or deny the exercise of any right provided under FMLA;
- Discharge or discriminate against any person for opposing any practice made unlawful by FMLA or for involvement in any proceeding under or relating to FMLA.

### Enforcement

An employee may file a complaint with the U.S. Department of Labor or may bring a private lawsuit against an employer.

FMLA does not affect any Federal or State law prohibiting discrimination, or supersede any State or local law or collective bargaining agreement which provides greater family or medical leave rights.

**FMLA section 109 (29 U.S.C. § 2619) requires FMLA covered employers to post the text of this notice. Regulations 29 C.F.R. § 825.300(a) may require additional disclosures.**



**For additional information:**
1-866-4US-WAGE (1-866-487-9243) TTY: 1-877-889-5627
**WWW.WAGEHOUR.DOL.GOV**



U.S. Wage and Hour Division

WHD Publication 1420 Revised January 2009

U.S. Department of Labor | Employment Standards Administration | Wage and Hour Division

# FAMILY MEDICAL
# LEAVE OF ABSENCE REQUEST FORM

Employee Name: _____   SS #: _____

Restaurant Location: _____   Store #: _____

Family medical leave is requested due to (provide full details): _____

_____

_____

_____

_____

Beginning date of leave: _____

Expected date of return to work: _____

Has a Family Medical Leave been taken for this condition (reason) previously?

Yes _____   Date _____   No _____

If leave is granted, the following rules will apply:

1. Any accrued, unpaid benefit days must be used before the leave of absence begins.

2. Employee may not work while on leave, except as part of an approved rehabilitation program.  Employee shall comply with applicable company policies, such as confidentially and conflict of interest.

3. No benefits (for example, sick pay, holiday, vacation pay, etc) will accrue during the leave.

## FAMILY MEDICAL
## LEAVE OF ABSENCE REQUEST FORM

4.  Upon employee's return to work the company will reinstate the employee to his/her former position or an equivalent one in accordance with applicable law and company policy.  Certain changes in hours and/or schedules may occur due to business needs.

5.  Health insurance coverage may be continued while an employee is on leave provided the employee pays 100% of the premium when due.

**For employees on health insurance plan:**
I do _____ or do not _____ wish to continue current health insurance coverage.
Arrangements must be made with the payroll department for payment of premiums.

_____          _____
Employee Signature                                              Date

_____          _____
Manager Signature                                                Date

Leave of absence is approved _____ not approved _____.  If not approved,

reason _____

_____

_____          _____
Authorized Signature                                            Date

## ALL LEAVE OF ABSENCE REQUEST FORMS ARE TO BE FORWARDED TO THE DISTRICT MANAGER AND THEN TO THE PAYROLL DEPARTMENT.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Jury Duty**

**DATE:**   **October 2011**

It is the civic and legal duty of employees to accept jury duty service when called.

To be eligible for an excused absence for jury duty, the employee must notify the Company immediately upon receipt of the notice to serve.  If it is a "call in" notice, the employee is not eligible for an excused absence unless called for service.  An attendance slip must be obtained from the court verifying the actual dates of service.

The Company shall continue the employee's regular pay during jury duty based on the days and hours that the employee is normally scheduled to work.

The Company will continue to provide health insurance benefits until the employee returns.  The employee will remain responsible for their portion of benefit costs. All benefit pay will continue to accrue during jury duty leave.

D-3

# EMPLOYEE POLICY MANUAL

**POLICY:**  **Leave of Absence - General**

**DATE:**  **October 2011**

A leave of absence is considered a privilege. In no instance is a leave granted automatically. The decision will be made at the sole discretion of the Company and will be administered with great care. Except for emergency situations, a leave must be requested by the employee at least 4 weeks in advance. A leave of absence is defined as four or more weeks off from work in excess of available vacation and/or sick time.

A leave of absence may be granted to maintain continuity of service in instances when unusual or unavoidable circumstances require an employee's absence. Leaves are granted on the assumption that the employee will be available to return to regular employment upon the expiration of the leave.

Duration of a leave of absence is dependent upon the employee's position and the needs of the workplace. The employee is to make the initial request for a leave of absence to his supervisor.

Consideration for a leave of absence shall be affected by the following factors, among others:

- o   The employee's record of performance, particularly attendance

- o   The urgency of the employee's situation creating the need for a leave

- o   The workload of the Company and the employee's department for the period that the leave is requested.

The employee must understand the following stipulations concerning the leave:

- o   The employee shall return to work immediately upon completion of the leave.

- o   The employee shall not engage in or apply for any alternate employment during a leave of absence.

D-4.1

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Leave of Absence – General**

**DATE:**     **October 2011**

---

- o   Leave extensions shall be granted only under extraordinary circumstances, and then only if requested prior to the end of the original leave.

- o   If the employee does not return to work on the first work day following the expiration date of the leave of absence or approved extension date, employment may be terminated.

- o   Any leave will be without pay.

- o   Holidays occurring during the leave of absence will not be paid.

- o   Only one personal leave of absence is allowed in any twelve month period. Said period will start from the last day of the leave of absence.

- o   When returning from a leave, the employee shall be returned to his/her former position or one of like status and pay whenever possible.

- o   Benefit time such as sick days and vacation does not accrue during the leave.  Performance and salary review may be delayed to the extent of the leave period.

- o   The employee's participation in such programs as group health insurance may continue during a leave of absence, but the cost of these programs must be paid 100% by the employee.

- o   This policy does not include Family Medical Leave as it is covered under another policy.

# EMPLOYEE POLICY MANUAL

**POLICY:**   Leave of Absence - General

**DATE:**   October 2011

Eligibility:  The employee must be employed for one year.  A leave will only be granted with less than one year of service if an emergency situation exists.  This must be approved by the District Manager.

All requests for a leave of absence must be placed in writing to his/her supervisor using the Leave of Absence Request Form.

The LOA form can be found on the company intranet.

D-4.3

# LEAVE OF ABSENCE REQUEST FORM

## THIS FORM IS NOT TO BE USED FOR FAMILY MEDICAL LEAVE REQUESTS

Employee Name: _____ SS #: _____

Restaurant Location: _____ Store #: _____

A Leave of Absence is requested for the following reason: _____

_____

_____

Beginning date of leave: _____

Date of return to work: _____

If leave is granted, the following rules will apply:

1.   Any accrued, unpaid benefit days must be used before the leave of absence begins.

2.   Employee may not work while on leave, except as part of an approved rehabilitation program.  Employee shall comply with applicable company policies, such as confidentially and conflict of interest.

3.   No benefits (for example, sick pay, holiday, vacation pay, etc) will accrue during the leave.

4.   Upon employee's return to work the company will reinstate the employee to his/ her former position or an equivalent one in accordance with applicable law and company policy.  Certain changes in hours and/or schedules may occur due to business needs.

5.   If employee does not return to work on the date promised, he/she may be terminated.

# LEAVE OF ABSENCE REQUEST FORM

6.      Employees who are on the health insurance plan may continue coverage while on leave provided the employee pays 100% of the premium when due.

7.      Granting a leave of absence does not create a contract between the company and any person for employment or entitlement to benefits.

**For employees on health insurance plan:**
I do_____ or do not_____ wish to continue current health insurance coverage.
Arrangements must be made with the payroll department for payment of premiums.

_____          _____
Employee Signature                                          Date

Leave of absence is approved _____ not approved _____. If not approved,

reason _____.

_____          _____
Manager Signature                                          Date

**ALL LEAVE OF ABSENCE REQUEST FORMS ARE TO BE FORWARDED TO THE DISTRICT MANAGER AND THEN TO THE PAYROLL DEPARTMENT.**

# BENEFITS

# EMPLOYEE POLICY MANUAL

**POLICY:**     **401 K Plan**

**DATE:**      **October 2011**

---

The Company encourages employees to plan for their future financial needs. In that light, the Company has established a 401k Pension Plan for eligible employees.

Employees may defer a portion of their salary on a pre-tax basis. The amounts eligible to be deferred on annual basis are set by the Internal Revenue Service.

The Company also offers a Roth 401k account; these contributions are made with after-tax funds.

The Company may elect to match a portion of the employee's contribution. The amount may change from year to year and will be set 30 days before the end of the calendar year. Prior year contributions do not guarantee that there will be future contributions.

In order to enroll in the plan, the employee must be 21 years old and have 1 year of service with at least 1,000 hours in each year. Entry into the plan is on the first day of the plan quarter following the date the employee becomes eligible.

Employees will receive an enrollment packet from the payroll department when they become eligible.

More detailed information about the plan can be found in the Plan Summary which is available upon request.

# EMPLOYEE POLICY MANUAL

**POLICY:**  **Long Term Disability**

**DATE:**  **October 2011**

---

The Company provides long term disability insurance to certain employees who have achieved longevity and/or certain salary levels.  The policy provides long term income protection in the event the employee suffers a covered injury, sickness or pregnancy.

The following are the eligibility requirements:

Full time employees, defined as at least 30 hours per week

Employees who earn $33,800 per year with 20 years or more of service

Employees who earn more than $33,800 per year and less than $41,600 per year with 15 years of service.

Employees who earn more than $41,600 per year and less than $100,000 per year with 10 years of service.

Employees who earn $100,000 or more.

Coverage details are provided in the policy which is provided to all participants upon enrollment.

# EMPLOYEE POLICY MANUAL

**POLICY:**       **Short Term Disability**

**DATE:**         **October 2011**

---

Under NYS law, the Company provides short term disability insurance to all employees who have worked for four consecutive weeks. The policy provides income protection in the event the employee suffers a covered injury, sickness or pregnancy.

A day of disability is defined as one on which the employee was prevented from performing work because of a disability and for which he/she has not been paid. The cost of medical care is not included in the payment. The employer or employer's insurance Company may require the employee to submit to examinations by a health care provider.

Benefits are paid for a maximum of 26 weeks of disability during 52 consecutive weeks. There is a 7 day waiting period for which no benefits are paid. Benefit rights begin on the 8th consecutive day of disability. Cash benefits are 50% of a claimant's average weekly wage for the last 8 weeks of employment up to a maximum benefit. The current maximum benefit allowance for any disability is $170 per week.

Disability can occur at any time during the pregnancy but it can only be determined and certified by a doctor or midwife. If the employee is disabled within four weeks of the last day she actually worked, she is entitled to benefits. If an employee decides to stop working earlier in the pregnancy without a doctor or midwife certification, she will not be entitled to benefits. In general, the length of disability for a pregnancy is six weeks.

# WORKPLACE POLICY

# EMPLOYEE POLICY MANUAL

**POLICY:**      **Electronic and Telephone Usage**

**DATE:**      **October 2011**

---

All electronic and telephone communication systems and all communications and information transmitted by, received from or stored in these systems are the property of the Company and as such are to be used solely for job related purposes. The use of any software and business equipment, including, but not limited to faxes, copiers, computers, the Company's email system and the internet for private use is strictly prohibited. Employees shall have no expectation of privacy with respect to their use of such systems.

Employees are not permitted to use a code, access a file or retrieve and store communications unless authorized to do so or unless they have received prior clearance from an authorized Company representative. Improper use of the email system (e.g. spreading offensive jokes or remarks), including the internet will not be tolerated. Employees who violate this policy are subject to disciplinary action up to and including termination.

To ensure that the use of electronic and telephone communications systems and business equipment is consistent with the Company's legitimate business interests, authorized Company representatives may monitor the use of such equipment from time to time. This includes monitoring internet usage of any kind and may also include listening to stored voice mail messages or reading stored email messages.

The following rules apply with respect to internet usage:

1. No browsing of restricted content web sites (e.g. sites that contain pornographic material).

2. No downloading of non-business related data.

3. No downloading of application programs. The Company does not permit the downloading or installation on Company computers of application software from the internet. Such software may not only contain embedded viruses, but also is untested and may interfere with the functioning of standard Company applications.

F-1.1

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Electronic and Telephone Usage**

**DATE:**   **October 2011**

---

4.   No participating in web-based surveys without authorization.  When using the internet, the user implicitly involves the Company in his/her expression.

5.   No use of subscription based services without prior approval.

6.   No violation of copyright.  Many of the materials are protected by copyright. Even though they may seem to be freely accessible, many of the intellectual property laws which apply to print media still apply to software and materials published on the internet.  Employees having any questions regarding such materials should contact the Legal Department.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Employee Accident Reporting**

**DATE:**    **October 2011**

---

Despite the Company's best efforts to provide a safe working environment for employees, accidents may occur which can cause injury to an employee. In the event an employee is injured on the job, an Employee Accident Report must be completed within a day of the accident by the manager on duty at the time of the accident.

The information on the report must be as detailed as possible including the specific injury, the body part injured, specifying the left or right side where applicable.

If a manager is the employee that is injured, he/she cannot complete the report. It must be done by another manager.

If the employee is going for medical treatment, the manager should let the employee know the name of the Company's workers compensation carrier.

The employee should not be told to take time off from work. The medical care provider will make that determination.

If the employee is required to take time off, notify the Payroll Department.

In accordance with Worker's Compensation regulations, an employee is not compensated by the Worker's Compensation Board for the first 7 days of lost time unless it extends beyond fourteen days. In that case, the worker may receive payment from the first work day off the job. The amount that a worker receives is based on his/her average weekly wage for the previous year.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Smoke Free Workplace**

**DATE:**   **October 2011**

---

A smoke free workplace policy has been developed to comply with the NYC Smoke Free Air Act (Title 17, Chapter 5 of the Administrative Code of the City of NY) and NYS Clear Air Act (Article 13E of the NYS Public Health Law) and to protect all employees and visitors from second hand smoke, an established cause of cancer and respiratory disease.

All areas of the workplace are smoke free without exception.

Any employee observing someone smoking should politely inform the offender that they are in a smoke free area and smoking is not permitted.  A supervisor should be informed of the situation of noncompliance.

Any employee found smoking on the Company's property is subject to disciplinary action.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Solicitation and Organization of Employees**

**DATE:**   **October 2011**

In an effort to make clear the circumstances under which an employee may engage in solicitation or organization of fellow employees, the Company has adopted a formal policy on collection, solicitation and organization of employees.  These rules are designed to permit such activity only at those times and in those areas which are compatible with the efficient and orderly operation of the Company's business.

Due to the nature of this policy, two working definitions are necessary in understanding the policy guidelines:

1.   The terms "solicitation" and "organization" shall include any verbal or written communication made by any employee or group of employees to another employee or group of employees which encourages, advocates, demands or requests a contribution of money, time, effort or personal involvement or membership in any fund (charitable or otherwise), collection, social, fraternal, religious, civic or labor organization or any kind or type whatsoever.

2.   The terms "insignia", "badges" or "buttons" shall include any symbol or ornamentation which identifies or states a slogan of or encourages membership in any fraternal, civil, political, religious or labor club or organization.

The following rules shall apply throughout the Company:

1.   No employee or organization shall engage in any solicitation of other employees for any purpose whatsoever during working hours or in work areas.

2.   An employee may engage in solicitation or organization of other employees if both the soliciting employee and solicited employee:

   a.   Are on an authorized and scheduled work break

   b.   Have completed or have not yet begun their normal work hours.

   c.   Approve of the solicitation.

F-4.1

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Solicitation and Organization of Employees**

**DATE:**      **October 2011**

3.  Any solicitation or organization permitted under #2 above may take place only in nonwork area of the office or restaurant, whether or not that work area is visible to customers

4.  No solicitation or organization of employees by a non-employee may take place on the premises of the Company (office or restaurant) at any time or under any circumstances.

5.  In order to maintain good customer relations, no employee may wear any insignia, badge or button on their person, nor display any insignia, badge or button on their desk or in their work area which identifies or states the slogan of any fraternal, civic, political, religious or labor organization when, as part of their normal duties and responsibilities, that employee comes into contact with customers of the Company, or is likely to do so.

6.  The Company may, on occasion, request employees to wear insignia, badges or buttons in relation to the Company, business or promotional campaign, and if it does, that request shall not be deemed a waiver or elimination of the rules set forth in #5 above.

F-4.2

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Guest Incident Reporting**

**DATE:**     **October 2011**

From time to time in an industry that provides goods and service to the public, an incident may occur that causes injury to a guest or damage to a guest's property. These incidents may be witnessed or obvious to the restaurant employee or the guest may allege that the incident has occurred. In any event, the customer is to be treated with respect and courtesy.

The manager on duty must be notified immediately to attend to the customer.

**It is extremely important to preserve any and all property or merchandise that was allegedly involved in the incident including, where applicable, the guest check. After an investigation has been made, the manager will be told by the District Manager what to do with property.**

F-5

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Uniforms and Employee Appearance**

**DATE:**     **October 2011**

---

As representatives of the Company, it is expected that employees will maintain an appearance that is clean, neat and well-groomed.

At the Company's expense, employees will be provided with uniforms with identifying logos or Company marks to be worn while on duty.   They may not be worn while not on duty.  Employees must be in full uniform before clocking in and must clock out before changing to street clothes.

**Front of the house guidelines:**

- Employees will receive shirts, hats and aprons, where applicable.
- Black pants, socks and shoes must be provided by the employee.
- Pants may not be jeans, cargo pants, stretch pants or leggings.
- Certain restaurants may allow female employees to wear skirts.  In these instances, black stockings must be worn.  Skirts may not be more than 2 inches above or below the knee.
- Shoes must be closed toe, polishable and slip resistant.
- No sweaters or sweatshirts may be worn over the uniform.  A t-shirt or turtleneck may be worn under the uniform shirt but it must complement the colors of the uniform.
- Employees are responsible to wash and maintain their uniforms at their expense.  Uniforms should be wrinkle-free.
- Company provided name tags must be worn.
- Tattoos must be covered.
- Jewelry must be conservative – No excessive or hanging earrings with no more than two earrings in each ear.  No plugs (large holes) in ears.  Wristwatches are permitted but bracelets may not be worn.  Only one ring per hand may be worn.
- No facial piercings.
- Hats or hairnets must be worn.

# EMPLOYEE POLICY MANUAL

**POLICY:**    **Uniforms and Employee Appearance**

**DATE:**    **October 2011**

- Partially grown mustaches and/or beards are not acceptable.
- Fingernails must be clean and well-maintained. Nail polish may not exceed proper or reasonable standards in color or decoration.
- Cell phones may be worn out of view of the customer. Phones must be on silent or vibrate. Calls may not be taken or placed while on the floor. Phone calls may only be made out of sight of the customer and only with manager approval
- Employees must maintain the proper standards of personal hygiene including the use of soap and deodorant. Excessive odors (e.g. body odor, perfumes, colognes or cigarette smoke) are not permitted.
- Employees must wash hands with soap and water after using the bathroom, after doing any prep and after cigarette breaks.

**Back of the house guidelines:**
- Employees will receive either a kitchen shirt or kitchen whites, where applicable.
- Shoes must be closed toe, polishable and slip resistant.
- Employees are responsible to wash and maintain their uniforms. If employee's uniform is kitchen whites, the Company's linen company will clean the uniforms.
- Jewelry must be conservative – No excessive or hanging earrings with no more than two earrings in each ear. No plugs (large holes) in ears. Wristwatches are permitted but bracelets may not be worn. Only one ring per hand may be worn.
- No facial piercings.
- Hair color may not exceed proper or reasonable standards.
- Hats or hairnets must be worn in the kitchen and prep areas.
- Beard nets must be worn in the kitchen and prep areas.
- Fingernails must be clean and trimmed. Nail polish may not be exceed proper or reasonable standards in color or decoration.

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Uniforms and Employee Appearance**

**DATE:**       **October 2011**

---

- Cell phones must be on silent or vibrate.  Calls may not be taken or placed while on the line.  Phone calls may only be made with manager approval
- Employees must maintain the proper standards of personal hygiene including the use of soap and deodorant.  Excessive odors (body odor, perfumes, colognes or cigarette smoke) are not permitted.
- Employees must wash hands with soap and water after using the bathroom, after doing any prep and after cigarette breaks.

Upon termination, uniforms must be returned to the Company.

Lockers are available to employees for daily use.  All clothes, accessories and personal items must be taken home each day.  Any locks left on lockers overnight will be cut off and the contents discarded.

It is recommended that employees do not bring valuables to work as the Company cannot be responsible for lost or stolen property.

F-6.3

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Alcohol Awareness**

**DATE:**   **October 2011**

The Company's license to serve alcoholic beverages is a privilege granted by New York State. It is the Company's policy to follow all laws regarding the sale of alcoholic beverages. As a representative of the Company, it is the employee's responsibility to comply with Company policies.

The legal drinking age in New York State is 21. All customers ordering an alcoholic beverage must be 21 years of age or older as a condition to being served alcoholic beverages in our restaurants.

Any person serving alcohol has personal potential legal risk and exposure for serving underage and inebriated customers. All bartenders and beer cart servers shall be required to be properly trained ("TIPS") in the service of alcohol within sixty (60) days of hire or placement in that position. Training will be done at the Company's expense by an employee licensed in TIPS training. The Security Dept is required to deliver to the payroll department certificates issued by the TIPS trainer evidencing successful completion of the TIPS training program. The certificates will be maintained in the employee's personnel file.

Standard practice shall be for the server or bartender to ask for ID from every customer ordering an alcoholic beverage. The manager must be called to the table or bar to confirm ID. After a bartender has completed TIPS training and has worked for the Company in any capacity for 1 year, he/she is permitted to ID without a manager. Beer cart servers and bartenders are required to scan ID's to verify authenticity.

Acceptable forms of ID are UNEXPIRED:
1. State issued drivers license with photograph
2. Passport
3. State issued personal ID with picture and state seal
4. Military ID

F-7.1

# EMPLOYEE POLICY MANUAL

**POLICY:**    **Alcohol Awareness**

**DATE:**      **October 2011**

---

Proper technique for checking an ID:

1.    Ask for ID when taking the drink order.  Have customer remove the ID from their wallet.
2.    Check the date of birth.  Examine the ID.
3.    Look at the photo and compare the picture with the person presenting the ID.
4.    Contact manager to confirm ID

In certain circumstances, no ID may be required from those customers who are obviously and patently above the age of 40 years (the so-called "Grey Hair" exception), or for those repeat customers who have been previously certified as of-age for purposes of consumption of alcohol.  If in doubt, then ID is required.

After confirming the customer is 21 or older, it is important to notice the customer's level of sobriety.  There are many things that can indicate whether a person has already had too much to drink. Some indications are: inappropriate behavior, slurred speech, loss of balance, sloppiness, loudness and poor hand/eye coordination.

If there is any question whether a customer should be continued to be served alcohol, a manager must be contacted.

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Tip Reporting**

**DATE:**      **October 2011**

The IRS and NYS require tipped employees to report all tips received each day.  The Company encourages full compliance with the law.

Tips include cash and charge tips received from customers and/or tips received from other employees through tip sharing or pooling.

Tips must be recorded by all tipped employees in the positouch system each day.

It is recommended that all tipped employees maintain a daily record of all tips received and tips shared using the IRS publication 1244 (Employee's Daily Record of Tips and Report to Employer) or a similar log.  Failure to keep a daily record of tip earnings may prevent employees from disproving allocated tip income.

A Guide to Tip Income Reporting prepared by the IRS follows for your reference.

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Tip Sharing**

**DATE:**      **October 2011**

---

Servers typically receive tips from customers in recognition of good service. The tip amount is usually based on the amount of the guest check.  The Company believes that other employees on the restaurant floor who directly impact the customer's experience should receive a share of tips.

Accordingly, all tips received by servers (directly tipped employees) are to be shared with bussers, runners and bartenders (indirectly tipped employees).   Each busser, runner and bartender is to receive 1.5% of the server's sales.  In the event there is more than one employee working in any position, the tips will be allocated between the employees.

Bartenders' tips are to be shared with bussers and runners at the rate of 1.5% of bartenders sales.

Tip out amounts are provided on the server's positouch cash out report.

Tips are paid directly from the server to the indirectly tipped employee.

All employees receiving tips are required to enter the tip amount received in the positouch system.

F-9





# If you work at a hair salon, barber shop, casino, golf course, airport, hotel, or perform cleaning, food delivery, or taxi cab services, and receive tips, this guide is for you.

The tip income you receive as an employee from the services such as those listed above — whether cash or included in a charge — is taxable income. As taxable income, these tips are subject to federal income tax, social security and Medicare taxes, and may be subject to state income tax as well.

The Internal Revenue Service (IRS) has prepared this guide to aid the employee who may need answers to tip income reporting questions.

# What tips do
# I have to report?

**Do I have to report *all* my tips to my boss?**

If you received $20.00 or more in tips in any one month, you should report all your tips to your employer so that federal income tax, social security and Medicare taxes, and maybe state income tax can be withheld.



**Do I have to report *all* my tips on my tax return?**

Yes. All tips are taxable income and should be reported on your tax return.



**I was told that I had to report only a certain percentage of my total sales as tips. Is this true?**

No. You must report to your employer all (100%) tips you receive, except for the tips from any month that do not total at least $20.00.

**Sometimes I don't get tips directly from customers, but rather from another employee. Do I need to report those tips?**

Yes. Employees who receive tips from another employee are required to report "tip-outs." Employees often disburse tips out of their earned tips to another employee (tip-outs). Remember, all tips are taxable income.



**Do I have to report tip-outs that I pay to other employees?**

No. You report to your employer only the amount of tips you retain. However, you must maintain records of tip-outs with your other tip income (cash tips, charged tips, split tips, tip pool).



2

# What records
# do I need to keep?

### What type of records do I have to keep?

You must keep a running daily log of all your tip income. You can use Publication 1244, *Employee's Daily Record of Tips and Report to Employer*, to record your tip income for one year. Publication 1244 includes Form 4070, *Employee's Report of Tips to Employer*, and Form 4070A, *Employee's Daily Record of Tips*. These forms have spacing for you to log your name, the employer's name and address, date tips were received, date of entry, tips received, tips paid out, and name of employee paid. Your daily log would be your best proof should your income tax return be questioned. For a free copy of Publication 1244, call the IRS at 1-800-829-3676.



### What can happen if I do not keep a record of my tips?

If it is determined in an examination that you underreported your tip income, the IRS will assess the taxes you owe based on the best available records of your employer. Tip income adds up. Underreporting could result in you owing substantial taxes, penalties, and interest.

### If I report all my tips to my employer, do I still have to keep records?

Yes. You should keep a daily log of your tips so that in case of an examination, you can substantiate the actual amount of tips received. There are a number of reasons why you might need records:

■ Your return could be randomly selected for a federal income tax examination.

For example: Your Form 1040, *U.S. Individual Income Tax Return*, establishes that you have your own home, two cars, and three exemptions, and your Form W-2 shows that you earned only $10,000 in income. In this scenario, an examination may occur if the examiner determines that income may have been underreported.

■ A tip examiner could review your employer's books and records. The examination could reveal unreported tip income that you may later need to verify.

■ An Internal Revenue Service Center may run a match of your income information from your Form 1040, *U.S. Individual Income Tax Return*, with the income information from your Form W-2. If these figures do not match, you could receive a notice about the discrepancy and a possible examination of your tax return.

3

# How does this affect my income tax filing?

**I forgot to report my tip income to my employer, but I remembered to record it on my federal income tax return. Will that present a problem?**

If you do not report your tip income to your employer, but you do record the tip income on your federal income tax return, you may owe a 50% social security and Medicare tax penalty and be subject to a negligence penalty and possibly an estimated tax penalty. When you do not report your tips to your employer, it places your employer at risk of possible assessment of the employer's share of social security and Medicare taxes.



**If I report all my tips but my taxes on the tips are greater than my pay from my employer, how do I pay the remaining taxes?**

You can either pay the tax when you file your federal income tax return or you can reach into your tip money and give some to your employer to be applied to those under-withheld taxes. The employer will then record these taxes and you will get credit on your Form W-2. If you wait to pay when you file your tax return, you may be subject to an estimated tax penalty.

**What can happen if I don't report my tips to the IRS?**

If the IRS determines through an examination that you underreported your tips, you could be subject to additional federal income tax, social security and Medicare taxes, and maybe state income tax. Also, a penalty of 50% of the additional social security and Medicare taxes, and a negligence penalty of 20% of the additional income tax, plus interest, may apply.



**What's in it for me if I report all my tip income?**

There are many good reasons why you want to report all your tip income:

■ Increased income may improve financing approval when applying for larger loan amounts (mortgage, car, and other loans)

■ Increased worker's compensation benefits, should you get hurt on the job

■ Increased unemployment compensation benefits

■ Increased social security and Medicare benefits (the more you pay, the greater your benefits)

■ Increased employee pension, annuity, or 401(k) participation

■ Check with your employer for other increased benefits (based on pay) that your company may offer, such as life insurance, disability payments, and the right to purchase stock options

■ Compliance with the tax law

4

# Is tip reporting unique to a specific industry?

**Does tip income reporting apply only to employees in a specific industry?**

No. Anyone who receives tip income is required by law to report it to his or her employer. The Tip Rate Determination/Education Program (TRD/EP) was first promoted in the gaming industry (casino industry) in Las Vegas, Nevada, and subsequently to the food and beverage industry. Other individuals that receive tip income include airport skycaps, bartenders, hair stylists, bellhops, casino workers, delivery service people, golf caddies, hotel housekeepers, manicurists, masseuses, parking attendants, railroad redcaps, and taxi drivers.



**Why should I report my tips to my employer?**

When you report your tip income to your employer, the employer is required to withhold federal income taxes, social security and Medicare taxes, and maybe state income tax.

Tip reporting may increase your social security credits resulting in greater social security and Medicare benefits when you retire. Tip reporting may also increase other benefits to which you may become entitled, such as unemployment benefits, worker's compensation, or retirement benefits. Additionally, a greater income may improve financing approval for mortgage, car, and other loans.

**Why has tip reporting become such an issue?**

To report all tip income has always been the law. The IRS has put greater emphasis on reporting tip income over the past few years because a significant number of taxpayers are not reporting all their tip earnings as taxable income.



# What is this compliance program I've heard about?

**My employer has entered into a compliance agreement with the IRS concerning tips. What is this?**

The Tip Rate Determination/Education Program was developed in 1993 to help those employees receiving tip income and their employers understand the laws on reporting tip income. Under this program, and depending on your specific business, your employer may enter into one of two arrangements – the Tip Rate Determination Agreement (TRDA) or the Tip Reporting Alternative Commitment (TRAC) (created in June 1995). Ask your employer for more information about this program.

Currently, the TRDA is only available to the food and beverage industry and the gaming (casino) industry.

At this time, TRAC is open to the food and beverage industry and the hair styling industry. Ask your employer for more information about this arrangement as it may be extended to other industries where tipping is customary.

**TRDA–What is my responsibility, as an employee, under the Tip Rate Determination Agreement?**

You are required to file your federal tax returns. You may be asked to sign a *Tipped Employee Participation Agreement* proclaiming that you are participating in the program. The employer, as a participant in the TRDA, has agreed with the IRS to a tip rate for the employer's establishment. To stay a participating employee, you must report tips at or above the tip rate determined by the agreement. Furthermore, as part of the TRDA arrangement, the employer is required to report your name, social security number, the hours worked or sales made, your job classification, and your reported tips to the IRS if you do not report tips at or above the determined tip rate.



6

The IRS provides the following publications and forms relating to tip income reporting. These products can be downloaded from the IRS Web site at www.irs.ustreas.gov and ordered through the IRS by dialing 1-800-829-3676 (TTY/TDD equipment access, dial 1-800-829-4059).

**Pub 505** *Tax Withholding and Estimated Tax*

**Pub 531** *Reporting Tip Income*

**Pub 1244** *Employee's Daily Record of Tips and Report to Employer.* This publication includes Form 4070, *Employee's Report of Tips to Employer,* and Form 4070A, *Employee's Daily Record of Tips.*

**Form 1040ES** *Estimated Tax for Individuals*

**Form 4137** *Social Security and Medicare Tax on Unreported Tip Income*



# VIOLATIONS - TERMINATIONS

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Anti-Harassment and Anti-Discrimination**

**DATE:**      **October 2011**

As an equal opportunity employer, the Company is firmly committed to providing a work environment free from discrimination, harassment or intimidation on the basis of race, sex, age, religion, disability, color, national origin, military status or any other basis prohibited by law.  This commitment applies to all hiring, discharge, promotion, pay benefits, reassignments and any other personnel actions affecting the terms, conditions and privileges of employment.  This commitment extends to making reasonable accommodations that enable qualified disabled individuals to perform the essential functions of their jobs.

All employees will be treated, and are to treat each other, fairly and with respect.

Employees will not be subjected to, and will not subject each other to discrimination or harassment of any kind.

The Company will not tolerate any of the following actions:

1. Making any employment decision or taking any employment action that is based on race, sex, age, religion, disability, color, national origin, military status or any other basis prohibited by law.

2. Acting in a way that may create a hostile, offensive, intimidating or demeaning environment on the basis of an employee's race, sex, age, religion, disability, color, national origin, military status or any other basis prohibited by law.

Any employee who is suspected of and found to have engaged in any harassing or discriminatory behavior of any kind will be immediately subject to any and all appropriate disciplinary actions including termination.

G-1.1

# EMPLOYEE POLICY MANUAL

**POLICY:**    **Anti-Harassment and Anti-Discrimination**

**DATE:**    **October 2011**

---

### Sexual Harassment Policy

It is illegal and strictly against the Company's policy for any employee, consultant, vendor, guest or customer, male or female, to harass any employee of the Company by making or subjecting a person to unwelcome sexual advances, unwelcome requests for sexual favors or to engage in any unwelcome or physical conduct of a sexual nature.

There are two basic forms of sexual harassment:

1.  Prohibited, quid pro quo sexual harassment occurs when a supervisor or manager makes unwelcome sexual advances, requests sexual favors, or engages in other verbal or physical conduct of a sexual nature, if the implication is that submission to such conduct is expected as part of the job. It is unlawful for a supervisor or manager to make employment decisions affecting the individual on the basis of whether the individual submits to or rejects sexual conduct.

2.  Prohibited, hostile work environment sexual harassment occurs when an unwelcome sexual advance, request for sexual favors, or other verbal or physical conduct of a sexual nature has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. This includes, for example, displaying sexually suggestive material in the workplace, unwelcome flirtation or advances, requests for sexual favors, or any other offensive words or actions of a sexual nature.

The Company will not condone or tolerate the sexual harassment of its employees by the co-workers, supervisor, or any individual under our control or by consultants, vendors, guests or customers. All employees, regardless of position or title, will be subject to severe discipline, up to and including termination, should the Company determine that an employee is engaged in the sexual harassment of another individual. The Company will promptly and thoroughly investigate the facts and circumstances of any claim of sexual harassment.

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Anti-Harassment and Anti-Discrimination**

**DATE:**       **October 2011**

## Other Kinds of Harassment

In addition to sexual harassment, harassment on the basis of race, color, sex, disability, religion or national origin can constitute unlawful employment discrimination. Insults, jokes, slurs or other verbal or physical conduct or activity relating to race, color, sex, religion or national origin are unlawful if they create an intimidating, hostile or offensive work environment, or they unreasonably interfere with an individual's work performance.

The Company will not condone or tolerate the harassment of its employees by their co-workers, supervisors, or any individual under our control or by consultants, vendors or client representatives. All employees, regardless of position or title will be subject to severe discipline up to and including discharge if the Company determines that an employee is engaged in the harassment of another individual. The Company will promptly and thoroughly investigate the facts and circumstances of any claim of harassment of any nature.

## Employee's Responsibility

Personal behavior and language that are acceptable to one individual may be offensive to another. All employees must recognize that the focus of this prohibition is on the effect of one's action, not the intent. Even an employee who believes that he or she is just kidding around or didn't mean any harm may act in ways that have the effect of intimidating or demeaning another employee, and thereby violating this policy.

## Complaint Procedures

It is the intention of the Company to ensure that employees have a work environment free of harassment by management personnel, by employee's coworkers and by others with whom employees interact in the course of their employment at the Company.

G-1.3

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Anti-Harassment and Anti-Discrimination**

**DATE:**   **October 2011**

As part of this effort, any employee who believes that he/she has been subjected to, or has witnessed actions that violate this policy should promptly make a report to management in order for management to immediately investigate and take corrective action where appropriate. The employee should not wait until the actions have become severe or pervasive but should report such activity immediately.

The employee may advise his or her direct supervisor, the next level superior or any other management official with whom the employee feels comfortable discussing such issues including, but not limited to, assistant managers, general managers and district managers.

Any person in a management position who receives a harassment or discrimination complaint from an employee must report such complaint to his or her immediate supervisor and the district manager as soon as reasonably practical.

All allegations of sexual harassment will be investigated quickly and, to the extent possible, the alleged harasser and employee will be separated so as to limit interaction until the conclusion of said investigation. To the extent possible, the employee's confidentiality and that of any witnesses and the alleged harasser will be protected against unnecessary disclosure. However, conducting an effective investigation requires sharing information with those who have a need to know. Anonymous complaints will be treated seriously but the failure to disclose the complainant's name will severely limit the investigation.

Any documents created or obtained concerning the harassment investigation will be treated with the same degree of confidentiality. Anyone who, in good faith, brings such a matter forward is assured that he or she will not suffer any retaliation, discrimination, harassment or reprisal for having done so.

Additionally, the Company has set in place a discrimination hotline so that any employee who feels that he or she was subject to harassment may call toll-free 1-866-560-6764 to report and discuss the alleged harassment with a dedicated Corporate Management employee.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Anti-Harassment and Anti-Discrimination**

**DATE:**   **October 2011**

### Retaliation Prohibited

The Company strictly prohibits retaliation against anyone who reports an incident in violation of the anti-harassment/anti-discrimination policy or anyone who participates or aids in an investigation of a complaint.  This includes, without limitation, changing of work shifts in a way that negatively affects the complainant, filing unwarranted disciplinary write-ups or any other actions and/or behavior that is meant to intimidate, manipulate or harass the complainant.

Any employees who violate any aspect of this policy, including the prohibition against retaliation, will face appropriate discipline up to and including termination.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Dispute Resolution**

**DATE:**   **October 2011**

---

The Company recognizes that, at times, problems and complaints may arise in the workplace.  It is the Company's intention to attempt to resolve them using the following procedures:

1.   An employee with a concern about policies, procedures, practices or any issue arising in the workplace should express the concern to the employee's immediate supervisor, where practicable.

2.   If the employee believes it would be inappropriate to express the concerns to the direct supervisor, the employee may bypass the supervisor and seek assistance from the next level of management in the division or use the Company's toll free help line – 1-866-560-6764.

3.   The complaint should be filed as soon as practicable after the event giving rise to the particular concern or complaint.

4.   If the employee discussed the concern with the employee's immediate supervisor or the next level and it is not resolved to the satisfaction of the employee, the employee may elect to request a meeting with the District Manager.  If the immediate supervisor is the District Manager, the employee may elect to request a meeting with the President of the Company.

5.   The Company will not permit any supervisor or employee to engage in any form of retaliation against an employee who uses this procedure or participates in the complaint resolution process.

6.   The procedure does not create any contractual rights.  The implementation of this procedure should also not be construed as preventing, limiting or delaying the Company from taking appropriate disciplinary action against any employee, up to and including termination, where the Company, at its sole discretion, deems such action appropriate.  In the Company's discretion, the implementation of this procedure may vary based on circumstances.

G-2

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Drugs and Alcohol**

**DATE:**   **October 2011**

It is the policy of the Company to provide a drug-free working environment. The use, sale, transfer, or possession of alcohol, drugs, controlled substances, drug paraphernalia, or any combination thereof while on the job and/or on Company property is grounds for discharge for the first offense.

While consumption of alcohol is permitted at Company sanctioned functions, employees may not become overly intoxicated. Employees who do so are subject to discipline, up to and including termination.

Employees taking over the counter or prescribed medications who are not able to perform their jobs satisfactorily should request a leave of absence. If an employee believes he or she is able to work while taking medication, and an issue concerning the individual's performance arises, it is expected that the employee will explain the use of medication to the supervisor. The supervisor will then take that fact into consideration in deciding upon the appropriate action. Such action may include sending the individual home, placing the individual on a medical leave of absence, requiring a drug test, or other action.

The Company views a violation of this policy as a serious offense that will be investigated. The employee is expected to cooperate with the investigation, including submitting to drug testing. Violating the policy or refusing to cooperate in an investigation may result in discipline up to and including termination.

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Employee Disciplinary Warnings**

**DATE:**   **October 2011**

---

Company policies are developed to maintain a safe and comfortable environment for employees and customers.

In the event an employee violates Company policy, it is up to the employee's supervisor to inform the employee of the violation and corrective actions required.

If a written warning is warranted, the Employee Disciplinary Warning Report on the Company intranet is to be completed by the supervisor.  Guidelines for employee discipline follow.

The warning report must be reviewed with the employee to provide counsel on how future violations can be avoided and/or to determine the date when corrective action must be achieved.

Best efforts should be used to obtain the employee's signature acknowledging the warning.

Written warnings will be included in the employee's personnel file.

## Employee Disciplinary Guidelines

**The following incidents may be considered causes for immediate dismissal:**

1. Insubordination
   a. Refusal to comply with supervisor's instructions
   b. Refusal to accept a proper job assignment
   c. Disrespectful behavior towards supervisor

2. Falsification
   a. Falsifying employee's own or other employees' information on employment applications or work records
   b. Clocking in or out another employee in the time keeping system

3. Misconduct – employee's failure to comply with one or more of the following company practices regarding coworker and customer relations and professionalism:
   a. Coworker or customer mistreatment, harassment or discrimination
   b. Fighting or horseplay
   c. Abusive or threatening language
   d. Unauthorized use of confidential information

4. Damages
   a. Malicious damage to or gross negligence of Company or customer's property

5. Theft
   a. Theft of Company, coworker's or customer's property

6. Gambling
   a. Conducting unlawful games of chance on Company property

7. Possession of the following on company property
   a. Firearms, knives or weapons of any sort
   b. Drugs (except those prescribed for employee's health reasons)
   c. Alcoholic beverages

8. Notification
   a. Failure to notify supervisor or manager of absence or lateness

9. Reporting to work under the influence of drugs or alcohol

### Employee Disciplinary Guidelines

10.     Refusal to sign and acknowledge Employee Incident/Warning Report

11.     Other – to be explained in detail

**The following actions may be considered causes for disciplinary action, and if not corrected after oral and/or written warnings, dismissal:**

12.     Habitual absenteeism or tardiness

13.     Leaving work area during regular working hours without permission, except for using the restroom.

14.     Use of obscene or abusive language

15.     Unauthorized use of Company telephones for personal calls, unauthorized long distance calls

16.     Unauthorized use of Company computers and other electronic or digital devices

17.     Poor performance
    a.     Failure to perform job functions
    b.     Creating unsafe or unsanitary conditions
    c.     Sleeping at desk or work area
    d.     Not following Company cash procedures

18.     Appearance
    a.     Lack of personal hygiene or presenting an unprofessional appearance
    b.     Noncompliance with uniform code

19.     Any illegal activity or any activity that causes the company to violate law

20.     Consistently under-reporting tip income

21.     Clocking in or out before changing in or out of uniform

22.     Other – to be explained in detail

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Termination**

**DATE:**       **October 2011**

---

Employment with the Company is on an "at will" basis and may be terminated by either the employee or the Company at any time with or without cause or notice. No commitment or other term of employment shall be inferred or otherwise assumed from any source whatsoever, written or oral. Employment at will is a term and condition of employment and continued employment for all persons employed by the Company.

<u>Voluntary by the employee:</u>
Upon notification by an employee of intent to resign from employment, a supervisor must:

a.     determine the reason for resignation
b.     ensure that all Company property and outstanding accounts are brought up to date prior to the termination date

Employees are encouraged to give the Company at least two weeks' notice in writing to their supervisor. If two weeks' notice is not given, any accrued benefit pay may be forfeited.

At the discretion of management, an employee may be terminated on the same day he provides notification of intent to resign. In such instances, consent may be given to paying the employee for the requisite notice. Such consideration is up to the discretion of the Company and requires the approval of the President of the Company.

<u>Involuntary termination:</u>
The decision whether an employee shall be terminated from employment is within the sole discretion of the Company. The supervisor making the termination decision should discuss the matter with his supervisor and, in certain instances, the Company's General Counsel prior to dismissing the employee.

# EMPLOYEE POLICY MANUAL

**POLICY:**     **Termination**

**DATE:**       **October 2011**

---

The manager must complete a Separation Notice using the online form on the Company intranet as soon as possible after the termination date.

Final pay will be paid to the terminated employee on the next regularly scheduled pay period.  Any manager who is being terminated, either voluntarily or involuntarily, will be taken off direct deposit for the last week of regular pay in order to settle up any open accounts.

# OTHER

# EMPLOYEE POLICY MANUAL

**POLICY:**   **Access to Personnel Files**

**DATE:**   **October 2011**

---

Employees are to be permitted reasonable access to their personnel files, including medical, workers compensation and immigration files during regular business hours in the presence of a Company employee charged with the maintenance of said files. Copies may be made at the expense of the employee.

Employees may make corrections to such information as their home address, telephone number, W4 and the like at reasonable times.

Additions to reviews, termination records and the like must be made with the knowledge of the supervisor.

Access by other employees and supervisors is limited to employees and supervisors in the performance of their job function. With respect to medical, workers compensation and immigration files, supervisors may have access only on a need to know basis.

Former employees may have reasonable access to their personnel file.

No non-employee may have access to the personnel, medical or immigration files except for representatives of insurance companies, governmental agencies or attorneys representing the Company. In any other instance, a subpoena will be required for a non-employee to access personnel, medical or immigration files.

# EMPLOYEE POLICY MANUAL

**POLICY:**      **Employment Verification**

**DATE:**        **October 2011**

---

If a potential employer requests a reference for a former employee AND the employee is eligible for rehire, the employee's supervisor may give a reference relating to the employee's attendance and work performance. If the employee is ineligible for rehire, the inquiry must be forwarded to the payroll department. In this situation, the payroll department will provide only the dates of employment and title or position. The payroll department will not respond to any other questions, including whether the employee is eligible for rehire, stating that it is against Company policy to respond.

Requests for information from financial institutions must be forwarded to the payroll department. All such requests will only be answered after the employee gives written permission to respond to specific inquires. Further, with regard to inquiries made pertaining to continued employment, the following statement will be made, "While all the employees of the Companies are employees at will, it is not anticipated that the employee status of the above named employee will be altered."

If a request is made from a government agency, there must be confirmation that the individual requesting it is actually connected with the governmental agency and has a proper reason for the request.

Even with a written request, no information beyond the dates and titles will be given unless there is a subpoena or a written release to disclose the information in a form satisfactory to the Legal Department.

# EMPLOYEE POLICY MANUAL

**POLICY:**      **Check Acceptance**

**DATE:**       **October 2011**

---

The Company prohibits the acceptance of checks, either personal or business, at the restaurant level for payment of goods and services.

Traveler's checks in US dollars in the amount of $100 or less may be accepted provided the following procedures are followed:

1. The traveler's check must be countersigned in the presence of a restaurant employee. The countersigned signature must match the signature already on the check.
2. Photo ID for the person presenting the traveler's check must be presented.
3. The identification number must be recorded on the back of the traveler's check.

**We do not accept Thomas Cook Visa Travelers checks in any denomination.**

# EMPLOYEE POLICY MANUAL

**POLICY:**       **Counterfeit Bills**

**DATE:**         **October 2011**

For restaurants with counterfeit scanner, the Company requires that all currency presented in amounts of $50 or $100 be scanned.  If the bill does not clear the counterfeit scanner, it cannot be accepted.

If the restaurant doesn't have a scanner or the scanner is broken, the manager must approve all $50 and $100 bills.  A counterfeit pen should be used to mark the bills to confirm they are valid.

The manager is required to scan bills in the amounts $50 or $100 again before the deposit is made.

# EXHIBIT C

EARNINGS STATEMENT - PAY STUB

| STORE | STORE NAME | | | SS # | M/S | DEP | FROM | TO | PAY DATE |
|---|---|---|---|---|---|---|---|---|---|
| 525 | 1552-TGI, INC. | | | XXX-XX-0243 | S | 00 | 09/12/11 | 09/18/11 | 09/23/11 |

| EARNINGS | RATE | HOURS | THIS PERIOD | YEAR TO DATE | |
|---|---|---|---|---|---|
| REGULAR | 5.0000 | 8.25 | 41.25 | 5,123.63 | |
| OVERTIME | | | | 0.00 | |
| SICK | | | | 0.00 | |
| HOLIDAY | | | | 13.75 | |
| VACATION | | | | 493.76 | |
| MISC INCOME | | | | 16.23 | |
| TIPS | | | 154.00 | 20,401.25 | |
| | | | | | |
| | | | | | |
| | | | | | |
| GROSS PAY | | | 195.25 | 26,048.62 | |

* Excluded from federal taxable wages

| DEDUCTIONS | THIS PERIOD | YEAR TO DATE | |
|---|---|---|---|
| FEDERAL INCOME TAX | 0.12 | 1,839.88 | |
| SOCIAL SECURITY TAX | 11.03 | 1,471.78 | |
| STATE INCOME TAX | | 110.04 | |
| CITY INCOME TAX | | 59.80 | |
| YONKER INCOME TAX | | 0.00 | |
| DISABILITY | | 24.46 | |
| MISC DEDUCTIONS | 0.60 | | |
| MEDICAL INS. DEDUCTION * | 27.00 | 1,328.00 | |
| UNION DEDUCTION | | 0.00 | |
| MEAL DEDUCTION | | 0.00 | |
| LOAN DEDUCTION | 2.50 | 280.00 | |
| 401K DEDUCTION * | | 0.00 | |
| 401K LOAN DEDUCTION | | 0.00 | |
| ROTH 401K DEDUCTION | | 0.00 | |
| NET PAY | 0.00 | 533.41 | |

| STORE | STORE NAME | | SS # | M/S | DEP | FROM | TO | PAY DATE |
|---|---|---|---|---|---|---|---|---|
| 525 | 1552-TGI, INC. | | XXX-XX-0243 | S | 00 | 09/19/11 | 09/25/11 | 09/30/11 |

| EARNINGS | RATE | HOURS | THIS PERIOD | YEAR TO DATE | |
|---|---|---|---|---|---|
| REGULAR | 5.0000 | 33.25 | 166.25 | 5,289.88 | |
| OVERTIME | | | | 0.00 | |
| SICK | | | | 0.00 | |
| HOLIDAY | | | | 13.75 | |
| VACATION | | | | 493.76 | |
| MISC INCOME | | | | 16.23 | |
| TIPS | | | 846.00 | 21,247.25 | |
| GROSS PAY | | | 1,012.25 | 27,060.87 | |

* Excluded from federal taxable wages

| DEDUCTIONS | THIS PERIOD | YEAR TO DATE | |
|---|---|---|---|
| FEDERAL INCOME TAX | 48.46 | 1,888.34 | |
| SOCIAL SECURITY TAX | 57.19 | 1,528.97 | |
| STATE INCOME TAX | | 110.04 | |
| CITY INCOME TAX | | 59.80 | |
| YONKER INCOME TAX | | 0.00 | |
| DISABILITY | 0.60 | 25.06 | |
| MISC DEDUCTIONS | 50.00 | 1,378.00 | |
| MEDICAL INS. DEDUCTION * | | 0.00 | |
| UNION DEDUCTION | | 0.00 | |
| MEAL DEDUCTION | 10.00 | 290.00 | |
| LOAN DEDUCTION | | 0.00 | |
| 401K DEDUCTION * | | 0.00 | |
| 401K LOAN DEDUCTION | | 0.00 | |
| ROTH 401K DEDUCTION | | 0.00 | |
| NET PAY | 0.00 | 533.41 | |