**FITAPELLI & SCHAFFER, LLP**
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CISSE DIOMBERA, YETUNDE AKINMURELE, TELAE MOORE, and CHRISTINE WILLIAMS, on** behalf of themselves and all others similarly situated,<br><br>**Plaintiffs,**<br><br>-against-<br><br>**THE RIESE ORGANIZATION, INC., 1552-TGI, INC., TAFT FRIDAY 50TH ST. LLC, 677 LEX TGI, INC., GOURMET MANAGEMENT CORP., 484 8TH OPERATING INC., 47 REALOPP CORP., NATIONAL 42ND STREET REALTY, INC., NO. 604 FIFTH AVENUE RESTAURANT, INC., UNION SQUARE OPERATING, INC.,**<br><br>**Defendants.** | **12 CIV. 8477 (RJS)** |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS IN PART, THE SECOND AMENDED CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 4

    I.      LEGAL STANDARD ............................................................................................ 4

    II.     PLAINTIFFS' 20 PERCENT CLAIM SHOULD NOT BE DISMISSED .................... 5

          A.   *The Dual Jobs Regulation Places Temporal Limits On The Amount Of Related Non-Tipped Work A Tipped Employee Can Perform*.................................................. 6

          B.   *The DOL Continues To Enforce Temporal Limitations On The Amount Of Related Non-Tipped Work A Tipped Employee Can Perform*....................................... 7

          C.   *Other Courts' Reliance On The DOL's 20 Percent Standard* ................................. 11

          D.   *Plaintiffs' Second Amended Complaint Contains Sufficient Facts To State A Claim To Relief That Is Plausible On Its Face* ................................................................ 14

    III.    DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED AS PREMATURE ...................................................................................................... 16

    IV.    PRIOR TO 2011, THE NEW YORK LABOR LAW REQUIRED EMPLOYERS TO MEET CERTAIN PRECONDITIONS PRIOR TO AVAILING THEMSELVES OF THE TIP CREDIT MINIMUM WAGE RATE ............................................................ 20

    V.    PLAINTIFFS' SAC SUFFICIENTLY ALLEGES FACTS DEMONSTRATING THAT THE DEFENDANTS WERE PART OF A SINGLE INTEGRATED ENTERPRISE AND THAT EACH NAMED DEFENDANT WAS AN EMPLOYER AND/OR JOINT EMPLOYER WITHIN THE MEANING OF THE FLSA .............. 23

CONCLUSION ................................................................................................................. 28

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Addison v. Reitman Blacktop, Inc.,* 283 F.R.D. 74 (E.D.N.Y.2011) ............................................25

*Angamarca v. Pita Grill 7 Inc.*, No 11 CIV. 7777 (JGK)(JLC),
    2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012) .........................................................................21

*Arculeo v. On–Site Sales & Mktg., LLC,* 425 F.3d 193 (2d Cir.2005) ......................................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................4

*Auer v. Robbins,* 519 U.S. 452 (1997) .......................................................................................11

*Barfield v. N.Y.C. Health & Hosps. Corp.,* 537 F.3d 132 (2d Cir.2008) ...................................24

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ..........................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................4

*Butler v. Sears, Roebuck & Co.*, 702 F.3d 359 (7th Cir. 2012) .................................................18

*Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374 (E.D.N.Y. 2012) ....................................16

*Cano v. DPNY, Inc.*, 287 F.R.D. 251 (S.D.N.Y. 2012) .............................................................24

*Capsolas, et al. v. Pasta Resources, Inc.,* No. 10 Civ. 5595 (RJH),
    2011 WL 1770827 (S.D.N.Y. May 8, 2011) .......................................................................27

*Carter v. Dutchess Community College,* 735 F.2d 8 (2d Cir.1984) ............................................24

*Chenensky v. New York Life Ins. Co.,* No. 07 Civ. 11504 (WHP),
    2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011) .................................................................16, 17

*Christopher v. SmithKline Beechman Corp.*, 132 S. Ct. 2156 (2012) .........................................11

*Clark v. Honey-Jam Café*, *LLC*, No. 11 Civ. 4832, ECF No. 69 (N.D. Ill. Apt. 22, 2013) ..........18

*Clinton's Ditch Coop. Co. v. NLRB,* 778 F.2d 132 (2d Cir. 1985)..............................................24

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) ..........................................................16, 17, 18

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ...........................21

*Cruz v. Rose Associates, LLC*, No. 13 Civ. 0112 (JPO),
   2013 WL 1387018, at *2 (S.D.N.Y. Apr. 5, 2013)...............................................23

*Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326 (2013)........................................11

*Driver v. AppleIllinois, LLC,* 890 F. Supp. 2d 1008 (N.D. Ill. 2012)....................12, 13

*Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) *cert. denied,*
   132 S. Ct. 1094, 181 L. Ed. 2d 977 (U.S. 2012)........................................ *passim*

*Fast v. Applebee's Int'l, Inc.,* No. 06 Civ. 4146 (NKL),
   2010 WL 816639 (W.D. Mo. Mar. 4, 2010) *aff'd*, 638 F.3d 872 (8th Cir. 2011) ...............8, 9

*Garcia v. Pancho Villa's of Huntington Vill.,* 678 F. Supp. 2d 89 (E.D.N.Y. 2010)......................27

*Gunawan v. Sake Sushi Restaurant*, No 09 Civ. 5018 (JO)
   2012 WL 4369754 (S.D.N.Y. Sept. 24, 2012) ..........................................21

*Harris v. comScore, Inc.*, No. 11 Civ. 5807,
   2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) ...................................................18, 19

*Hamadou v. Hess Corp.*,
   No. 12 Civ. 0250, 2013 WL 164009 (S.D.N.Y. Jan. 16, 2013) ............................16

*Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132 (2d Cir.1999)...................................24

*In re Motor Fuel Temperature Sales Practices Litigation*, MDL No. 1840,
   2013 WL 1397125 (D. Kan. April 5, 2013)................................................19

*In re Urethane Antitrust Litig.,* 251 F.R.D. 629 (D. Kan. 2008) ................................19

*Karic v. Major Automotive Cos.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011) .....................................27

*Khamsiri v. George & Frank's Japanese Noodle Restaurant Inc.,*
   No. 12 Civ. 265, 2012 WL 1981505 (S.D.N.Y. June 1, 2012)................................27

*Lanzetta v. Florio's Enterprises, Inc.,* 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011) .....................21

*Lopez v. Acme American Environmental Co.*, No. 12 Civ. 511 (WHP),
   2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) .........................................26

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ....................4, 14

*Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316 (DLC),
   2012 WL 3133547, (S.D.N.Y. Aug. 1, 2012) .......................................21

*Monterossa v. Martinez Restaurant Corp.*, No. 11 Civ. 369 (JMF),
   2012 WL 3890212 (S.D.N.Y. Sept. 7, 2012)..........................................21

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009)....................................................21, 22

*Paz v. Piedra*, No. 09 Civ. 03977 (LAK), 2012 WL 121103 (S.D.N.Y. Jan. 12, 2012) ..............26

*Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007)
    *aff'd,* 291 F. App'x 310 (11th Cir. 2008)........................................................................12, 13

*Pereyra v. Fancy 57 Cleaners, Inc.*, No. 11 Civ. 1522 (RJS), 2013 WL 1385205
    (S.D.N.Y. Mar. 20, 2013) ............................................................................................23, 24

*Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497
    (S.D.N.Y. Feb. 28, 2013) ...........................................................................................4, 23, 25

*RBS Citizens, N.A. v. Ross*, No. 12 Civ. 165, 2013 WL 1285303 (2013)....................................20

*Roach v. T.L. Cannon Corp.*, No. 10 Civ. 0591 (TJM) (DEP), 2013 WL 1316452
    (N.D.N.Y. Mar. 29, 2013)................................................................................................19

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947) ............................................................6

*Salazar-Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183 (W.D.N.Y. 2011) .........................10

*Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547 (S.D.N.Y. 2011) ..................................20

*Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290 (1985)............................................6

*Wang v. The Hearst Corporation,* No. 12 Civ. 793 (HB),
    2012 WL 2864524 (S.D.N.Y. July 12, 2012) .........................................................................16

## STATUTES

29 U.S.C. § 203................................................................................................................ *passim*

29 U.S.C. § 216(b) ..................................................................................................................26

## RULES

Fed. R. Civ. P. 8.......................................................................................................................4

Fed. R. Civ. P. 12.....................................................................................................................4

Fed. R. Civ. P. 23..................................................................................................................3,15

## REGULATIONS

29 C.F.R. 531.56(e)........................................................................................................ *passim*

N.Y. Comp. Codes R. Regs. tit. 12, § 137–2.2 .................................................................... *passim*

N.Y. Comp. Codes R. Regs. tit. 12, § 137–2.1 ................................................................... *passim*

N.Y. Comp. Codes R. Regs. tit. 12, § 146-2.9 ................................................................................. 2

**OTHER AUTHORITIES**

Department of Labor, Field Operations Handbook § 30d00(e) ................................................. 9, 10

WHD Opinion Letter WH-502, 1980 WL 141336 (March 28, 1980) .............................................. 8

"Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act," available at
http://www.osha.gov/pls/epub/wageindex.download?p_file=F22326/Fact%20Sheet%
2015.pdf (last visited May 1, 2013) ................................................................................. 7, 10

Brief for the Secretary of Labor as Amicus Curiae Supporting Appellees, *Fast, et al., v.
Applebee's International, Inc.*, 638 F.3d 872 (8th Cir. 2011), 2010 WL 3761133, at
*15 (C.A.8). ................................................................................................................ 7, 8

## PRELIMINARY STATEMENT

Plaintiffs Cisse Diombera, Yetunde Akinmurele, Telae Moore, and Christine Williams are former servers and bartenders who collectively worked for Defendant The Riese Organization, Inc., at six of its T.G.I. Friday's restaurants in Manhattan, New York.

Defendants are a series of ten T.G.I. Friday's chain restaurants located in Manhattan (collectively "Friday's"). Each restaurant is centrally owned, operated, and controlled by Defendant The Riese Organization, Inc. ("Riese"). Beneath Riese is a series of subsidiaries including 1552-Tgi, Inc., Taft Friday 50th St. LLC, 677 Lex TGI, Inc., Gourmet Management Corp., 484 8th Operating Inc., 47 Realopp Corp., National 42nd Street Realty, Inc., No. 604 Fifth Avenue Restaurant, Inc., and Union Square Operating, Inc.

Riese, as the controlling entity, is responsible for implementing the policies and procedures that are applied to all tipped employees at the Friday's restaurants. In that regard, Riese issues to all new tipped workers employment manuals outlining universal company policies. The common policies contained in Riese's employment manual include, but are not limited to: policies related to the payment of minimum wages and overtime, disciplinary actions, procedures for terminations, uniform requirements, procedures for hiring, benefits, and tip reporting. In addition, Riese requires all tipped employees to use the same point of sale system to log in and out of their shift, regardless of location.

On February 5, 2013, Plaintiffs' filed their Second Amended Class Action Complaint ("SAC") alleging that Defendants committed multiple violations pursuant to the New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA"). Relevant to Defendants' motion to dismiss, Plaintiffs allege that Defendants (1) improperly availed themselves of the tip credit minimum wage permitted under the FLSA by compelling its employees to regularly spend a

substantial amount of time, in excess of 20 percent, performing non-tip producing side work; (2) failed to maintain accurate records and/or supply tipped employees with an accurate statement of wages pursuant to N.Y. Comp. Codes R. Regs. tit. 12, §§ 137–2.1, 2.2; and (3) engage in a policy and practice whereby tipped employees were required to perform work off-the-clock for Defendants without compensation.

Now, Defendants attempt to partly dismiss Plaintiffs' SAC on four separate grounds. First, Defendants seek to eradicate over thirty years of precedent developed by the Department of Labor ("DOL") which protects tipped employees from unfair uses of the tip credit minimum wage. Doing so would allow employers to use tipped employees to perform massive amounts of non-tipped work at the tip credit rate. In support of their argument, Defendants misrepresent DOL precedent and misapply case law relevant to this issue. Contrary to Defendants' assertions, since issuing 29 C.F.R. 531.56(e) in 1967, the DOL has always placed temporal limitations on the amount of non-tipped work a tipped employee can perform.[1]

Over time, the DOL has refined the temporal limitations originally outlined in their regulation, culminating with the "20 percent standard". This standard, as outlined in the DOL's Field Operations Handbook, has remained consistent over the years and has received deference from the Eighth Circuit as well as the Northern District of Illinois.

Based on the DOL's interpretation of its own regulation, Plaintiffs' SAC alleges in great detail how tipped employees at Friday's were required to perform non-tipped side work for more

---

[1]     Although there is no relevant case law in this Circuit regarding the 20 percent standard, the New York Department of Labor has clearly embraced similar temporal limitations. Under New York law, "[o]n any day that a service employee or food service worker works at a non-tipped occupation (a) for two hours or more, or (b) for more than twenty percent (20%) of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day." N.Y.Code Comps. R. & Regs. tit. 12, § 146–2.9 (2011).

than 20 percent of their shift. Although Defendants' claim that the 20 percent standard creates an "unworkable system" for employers, since the filing of this lawsuit Defendants have miraculously found a way to make the standard work. Defendants now pay tipped employees the full minimum wage rate, or higher, when performing non-tipped side work at the start of their shift. Accordingly, we urge this Court to adopt the DOL's interpretation of 29 C.F.R. 531.56(e) and find that Plaintiffs' SAC sufficiently alleges such claims.

Second, Plaintiffs' ask this Court to deny Defendants' motion to strike Plaintiffs' off-the-clock class allegations from the SAC. Defendants' attempt to strike class allegations from the SAC is premature as Defendants' argument is one which should be reserved for a motion for certification pursuant to Fed R. Civ. P. 23. Regardless, Plaintiffs' SAC sufficiently establishes that Defendants implemented a policy and procedure which required all tipped employees to perform work off-the-clock. As a result, Plaintiffs respectfully request that this Court deny Defendants' motion to strike.

The third issue appears to be nothing more than confusion on Defendants' part, rather than an actual issue of law. Specifically, Plaintiffs have alleged in their SAC that Defendants failed to supply Plaintiffs with an accurate statement of wages and failed to maintain accurate records. *See* N.Y. Comp. Codes R. Regs. tit. 12, §§ 137–2.1, 2.2. Prior to 2011, a failure to comply with §§ 137–2.1, 2.2 prevented an employer from availing itself of the NYLL's tip credit. As this is a well settled matter of law, Defendants' request to dismiss Plaintiffs' SAC as it pertains to these claims should be denied.

Lastly, Defendants attempt to dismiss three related corporate entities, Gourmet Management Corp., 484 8th Operating Inc., and National 42nd St. Realty, Inc., from Plaintiffs' SAC. Plaintiffs have alleged that as the controlling entity, Riese maintained control, oversight

and direction over tipped employees at all Friday's locations.  In exerting this uniform control, Defendant Riese subjected all tipped employees to the same policies, practices and procedures in violation of the FLSA and NYLL. As such, the moving subsidiaries did not operate independently, but as an extension of Riese and thus should not be dismissed from the SAC.

Accordingly, Plaintiffs respectfully request that this Court deny Defendants' motion in its entirety.

## ARGUMENT

### I.      Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *4 (S.D.N.Y. Feb. 28, 2013). Federal Rule of Civil Procedure 8(a)(2), requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 8, a pleading does not require "detailed factual allegations". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

### II.      Plaintiffs' 20 Percent Claim Should Not Be Dismissed.

Defendants do not contest Plaintiffs' allegations that they spent more than 20 percent of their shift performing non-tipped side work. Rather, Defendants contend that the claim does not

exist as a matter of law. Despite the clear intentions of the DOL, Defendants attempt to depict a confused DOL "flip flopping" on its own regulations. Defendants' interpretation of the evolution of the 20 percent standard is, at the very least, distorted and would allow employers to take advantage of tipped employees by having them perform work that should be done by back of the house employees such as cooks, dishwashers, and janitors.

Under Defendants' interpretation of the FLSA, employers would be permitted to have tipped employees spend up to half of their shift performing mass quantities of general non-tipped preparation work, undirected towards specific customers, and earn the tip credit minimum wage.[2] Aside from being an inaccurate interpretation of the FLSA, it is contrary to the meaning of the FLSA, to protect workers from "substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). In fact, Defendants' counsel recently filed a nearly identical motion in a case which similarly alleged a 20 percent violation. That motion was denied by the Honorable Judge Hellerstein out of hand. **Exhibit ("Ex.")  A,** Order Dated April 25, 2013 (J. Hellerstein).[3] In his decision, Judge Hellerstein found that the issues raised by the pleadings were too complicated, and too fact-intensive to be resolved by a "12(c)" motion. Id.

The scenario the SAC alleges goes to the heart of what the DOL was trying to prevent through its interpretation of section 531.56(e). Simply stated, Plaintiffs' SAC contains sufficient factual matter to establish that Defendants perpetrated, and Plaintiffs were the victims of, a scheme whereby tipped employees are required to spend a substantial amount of time (more than 20 percent) engaged in non-tipped side work at the start and end of their shifts while being compensated at the tipped minimum wage rate.

---

[2]     Defendants' Memorandum of Law at 13.
[3]     All exhibits are attached to the Declaration of Joseph A. Fitapelli.

### A. The Dual Jobs Regulation Places Temporal Limits On The Amount Of Related Non-Tipped Work A Tipped Employee Can Perform.

The FLSA is a statute of broad remedial purpose. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). The provisions of the Act are broadly construed "to apply to the furthest reaches consistent with Congressional direction". *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296  (1985).

Section 203(m) of the FLSA permits an employer to take a "tip credit" against the minimum wage it is required to pay its tipped employees if an employer meets certain requirements. A "tipped employee" is defined as "any employee engaged in an *occupation* in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (emphasis added). When adding Sections 203(m) and 203(t) to the FLSA, Congress did not define occupation or address the possibility of an employee working more than one occupation for the same employer. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878 (8th Cir. 2011) *cert. denied,* 132 S. Ct. 1094, 181 L. Ed. 2d 977 (U.S. 2012). Following the addition of 203(m) and 203(t), the Secretary of Labor promulgated section 531.56(e) (the dual jobs regulation) in an attempt to further define when an employee is engaged in a tipped occupation. *Id*.

Section 531.56(e), provides examples which clearly indicate that the DOL intended that temporal limitations be placed on the amount of related duties an employee can perform and still be considered engaged in the tip-producing occupation. *Fast*, 638 F.3d at 880. In the first example, the DOL identified an employee who is employed both as a maintenance man and a waiter, and explains that under such circumstances the individual is deemed to be "employed in two occupations, and no tip credit can be taken for his hours of employment in his [non-tipped] occupation of maintenance man." 29 C.F.R. 531.56(e).

6

In the second example, the DOL distinguishes the maintenance man/waiter from:

> … a waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such *related duties* in an occupation that is a tipped occupation need not by themselves be directed toward producing tips. 29 C.F.R. 531.56(e). (emphasis added)

Through these examples, the dual job regulation makes a distinction between an employee performing two distinct jobs, one tipped and one not, and a tipped employee performing *related duties* within an occupation  "part of the time" and "occasionally". Despite Defendants' contentions, 29 C.F.R. 531.56(e) indicates that employers would only be permitted to take a tip credit for the periods when tipped employees spent "part" of their time or "occasionally" engaged in related non-tipped work. Brief for the Secretary of Labor, 2010 WL 3761133, at *8-9. ("The Department's 'dual jobs' regulation, issued pursuant to specific legislative authority and after notice and comment, provides that an employer may continue to take a tip credit if a tipped employee 'occasionally' engages in duties related to the tipped occupation…").

**B. The DOL Continues To Enforce Temporal Limitations On The Amount Of Related Non-Tipped Work A Tipped Employee Can Perform.**

Following the addition of the 1967 dual jobs regulation, the DOL continued to advance its interpretation that section 531.56(e) placed temporal limits on the amount of related non-tipped work an employee could perform and still be eligible to receive the tip credit. As the Eighth Circuit found in *Fast,* section 531.56(e) does not address "the impact of an employee performing related duties more than 'part of [the] time' or more than 'occasionally.' Nor does it define 'related duties' or address a tipped employee who performs duties unrelated to his tipped

occupation." *Fast*, 638 F.3d at 877 (*quoting* 29 C.F.R. 531.56(e)). These ambiguities would result in the DOL's refinement of the issue over time.

The DOL first expounded on the ambiguities of section 531.56(e) through a March 28, 1980 opinion letter. There, the DOL determined that pursuant to the dual jobs regulation an employer was permitted to take the tip credit for cleaning the salad bar, placing condiment crocks in the cooler, cleaning and stocking the waitress station, cleaning and resetting the tables (including filling cheese, salt and pepper shakers) and vacuuming the dining room carpet, after the restaurant is closed. WHD Opinion Letter WH-502, 1980 WL 141336 (March 28, 1980). However, the DOL warned that where it "…might have a different opinion if the facts indicated that specific employees were routinely assigned, for example, maintenance-type work such as floor vacuuming". *Id*.

After determining that the tip credit could be taken for work before and after a restaurant is open, the DOL recognized that a reasonable limit had to be placed on the amount of non-tipped work that could be assigned that was not customer specific. *Fast v. Applebee's Int'l, Inc.*, No. 06 Civ. 4146 (NKL), 2010 WL 816639, at *6 (W.D. Mo. Mar. 4, 2010) *aff'd*, 638 F.3d 872 (8th Cir. 2011). "Otherwise, an employer could effectively use servers and bartenders as janitors and cooks both during and outside business hours when no customers were present." *Fast*, 2010 WL 816639, at *6. This was accomplished through the DOL's December 20, 1985, opinion letter which expounded on the temporal limits identified in section 531.56(e). **Ex. B**, DOL 1985 Opinion Letter ("DOL Letter").

There, much like the case at bar, tipped employees were required to clock in up to two hours before the restaurant opened to perform opening responsibilities including stocking tables and waitress stations, preparing tea and coffee and preparing vegetables for a salad bar. Id at 1.

After reiterating the language in 29 C.F.R. 531.56(e), the DOL stated that the tolerance for such related duties was limited to those activities that are "*incidental to* the waiter or waitress's regular duties"; if the tipped employees spent "*a substantial amount of time* in performing general preparation work," no tip credit could be taken for hours spent in such activities. Id at 2-3; *see also Fast*, 2010 WL 816639, at *5 (citing the December 20, 1985 DOL opinion letter for the proposition that employers could not take the tip credit where tipped employees spend a substantial amount of time performing general preparation work or maintenance).

In 1988, the DOL brought its' temporal interpretations of 29 C.F.R. 531.56(e) to its final form in the FOH. There, the DOL recognized and repeated the distinctions made in the section between the waiter who also worked as a maintenance man and a waitress who performed some related non tip-producing work. *Fast*, 638 F.3d at 877. According to FOH § 30d00(e):

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends *some time* cleaning and setting tables, making coffee, and *occasionally* washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, *where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing preparation work or maintenance, no tip credit may be taken for the time spent in such duties.* FOH § 30d00(e) (emphasis added).

The FOH incorporates the opinion letters mentioned *supra* as well as the examples in section 531.56(e) and embodies the DOL's longstanding interpretation of the dual jobs regulation. As a result, section 30d00(e) is a well developed and meaningful interpretation of the DOL's own regulation and precedent.

Since articulating the 20 percent threshold in the FOH, the DOL has consistently maintained its long running interpretation that the amount of non-tipped or general preparation work performed by a tipped employee should be limited in order for an employer to avail itself of the tip credit. In July 2009, the DOL made available to employers a fact sheet which cited the FOH's language regarding the 20 percent standard. *See* "Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act," available at http://www.osha.gov/pls/epub/wageindex .download?p_file=F22326/Fact%20Sheet%2015.pdf (last visited May 1, 2013). Additionally, in September 2010, the DOL reiterated its commitment the 20 percent standard through an Amicus Brief submitted in *Fast*. There, the DOL argued that its "longstanding and reasoned interpretation of the dual jobs/related duties legislative rule, as reflected in the FOH and instant amicus brief, is entitled to controlling deference." Brief for the Secretary of Labor, 2010 WL 3761133, at *15 (C.A.8).

In a desperate effort to distract the Court from the DOL's intellectual development on the issue, Defendants throw a substantial amount of weight behind a 2009 DOL opinion letter proposing to abolish the FOH's 20 percent standard. The 2009 letter was published and *simultaneously withdrawn* with a statement from the DOL indentifying that the letter could not be relied on as a statement of agency policy. *Id.* at *n3.  As a result, there did not exist a second in time where this letter could be relied on as the DOL's interpretation of the dual jobs regulation. *See Salazar-Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183, 195 (W.D.N.Y. 2011) (denying defendant's request that the court rely on a DOL interpretation from an interpretive bulletin because it was withdrawn 90 days after being issued). Notwithstanding the above, Defendants knowingly misrepresented the DOL's position by citing the withdrawn 2009

opinion letter as an "abandonment" of the 20 percent standard. *See* Defendants' Memorandum of Law at 8. This is hardly the case.

**C.** *Other Courts' Reliance On The DOL's 20 Percent Standard.*

In *Fast v. Applebee's*, the Eighth Circuit observed that the DOL's interpretation of section 531.56(e) as contained in its FOH, is entitled to deference under the standard of *Auer v. Robbins,* 519 U.S. 452, 461 (1997), that is, the interpretation is controlling unless plainly erroneous or inconsistent with the regulation. [4] *Fast,* 638 F.3d at 878–79.

There, plaintiff servers and bartenders were required to perform non-tip producing duties for significant portions of their shifts. *Id*. at 875. In particular, plaintiffs alleged that they were required to perform general cleaning and preparation of the restaurant before and after the restaurant's hours of operation.  *Id*. In its decision, the court determined that section 531.56(e) is itself ambiguous because it does not address an employee performing related duties more than "part of [the] time" or more than "occasionally," and the ambiguity supports the DOL's attempt to further interpret the regulation *Id*. at 879-80. As a result, the Eighth Circuit found "…the DOL's interpretation contained in the Handbook—which concludes that employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time without the tip credit—is a reasonable

---

[4]     The case at bar differs dramatically from the Supreme Court's decision in *Christopher v. SmithKline Beechman Corp.*, 132 S. Ct. 2156 (2012). Here the DOL's interpretation has remained consistent over time, there is no indication that its current view has a change from prior practice or a *post hoc* justification adopted in response to litigation. *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) (*citing Christopher*, 132 S. Ct. 2156). The DOL maintained its position on the 20 percent standard by appropriately withdrawing the 2009 opinion letter and continuing to uphold the FOH, therefore the FOH should receive the appropriate deference.

interpretation of the regulation. It certainly is not 'clearly erroneous or inconsistent with the regulation.'" *Id.* at 880-81, (*quoting Auer,* 519 U.S. at 461).

Similarly in *Driver v. AppleIllinois*, the court granted plaintiffs' motion for summary judgment on the dual jobs claim while simultaneously denying defendants' motion for same. *Driver v. AppleIllinois, LLC,* 890 F. Supp. 2d 1008, 1010 (N.D. Ill. 2012). There, tipped employees alleged that defendants required them to perform non-tipped work before, during and after their shift and, as a result of this practice, tipped employees spent more than 20 percent of their shift engaged in non-tipped work. Relying on the Eighth Circuit's decision in *Fast*, the court gave deference to the DOL's 20 percent standard as outlined in its FOH. *Id.* at 1033 ("Enforcing a temporal limitation on related but non-tipped duties is not radical or even innovative. The DOL Handbook section setting out temporal limitation dates from 1988, 24 years ago").

In its analysis, the court found that the evidence demonstrated that defendants' employees working at tip credit rates did non-tipped duties for much longer periods of time than can be fairly characterized as occasional, incidental or insignificant. *Id.* at 1029. In addition, many of the duties tipped employees alleged they performed as part of non-tipped work are similar to the duties Plaintiffs' alleged they performed. *See Id.* at 1016 ("The pre-2008 side work…setting up the Expo Line, Salad/Dessert Station, Beverage Station, and side stations; preparing dressings, eggs, lemons, coffee and iced tea; cleaning all stainless steel in the back of the house; sweeping the GU floor on the server side; stocking cups, glassware, and ice bin; vacuuming aisles and ramps; taking apart and detailing the soda machine; keeping the Expo lines stocked; detailing the expo stainless; and rolling silverware"); **Ex. C,** Plaintiffs' SAC ("SAC"), at ¶¶ 6,10.

In their motion, Defendants attempt to disregard both *Fast* and *Driver* and persuade the Court to adopt their misinterpretation of *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1314 (S.D. Fla. 2007) *aff'd,* 291 F. App'x 310 (11th Cir. 2008). However, Defendants representation of *Pellon* fails to depict the case accurately.

In *Pellon*, plaintiffs consisted of members of the "skycap" vocation, individuals vested with meeting airline travelers at the curb and assisting them with their luggage. *Id*. at 1310. Unlike the case at bar where Plaintiffs allege they perform substantial amounts of non-tipped work at the start and end of their shift, the duties at issue in *Pellon* were intertwined with direct tip-producing tasks throughout the day. Plaintiffs there not only failed to show that they spent more than 20 percent of their shifts engaged in general preparation work or maintenance, but admitted that dividing their workday among the various tasks they performed was impractical or impossible. *Id*. at 1314. Most importantly, the court made no attempt to determine whether or not the FOH was entitled to deference. *Id*. In addition, *Pellon* was cited by the Eighth Circuit in *Fast* for the proposition that "where related duties are performed intermittently and as part of the primary occupation, these duties are subject to the tip credit". *Fast*, 638 F.3d at 880.

The circumstances alleged in Plaintiffs' SAC are factually similar to *Fast*, *Driver*, and the DOL's 1985 opinion letter and distinguishable from *Pellon* because tipped employees at Friday's perform a substantial amount of non-tipped work *before* and *after* the restaurant is closed. **Ex. C**, SAC, at ¶¶ 7,8,9. Since these duties are performed during periods when tipped employees cannot receive tips and are performed for more than 20 percent of their shift, the specific side work duty assigned is irrelevant. *See Driver*, 890 F. Supp. 2d at 1033 ("Even if, *arguendo,* silverware rolling is considered "related," it is clearly not tip-producing"). Moreover, Defendants reliance on

O*Net to determine a tipped employees related and unrelated duties is immaterial when, like here, such duties are performed in mass quantities during periods where they cannot receive tips.

### D. Plaintiffs' Second Amended Complaint Contains Sufficient Facts To State A Claim To Relief That Is Plausible On Its Face.

Under the DOL's 20 percent standard, Plaintiffs' SAC alleges sufficient facts to state a claim to relief that is plausible on its face. *See Lundy*, 711 F.3d at 114 ("So to survive a motion to dismiss, Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours").

The SAC identifies that tipped employees at Friday's perform non-tipped side work that included, but was not limited to:

> (1) boiling soup and defrosting frozen soup; (2) lining baskets with wax paper for hamburgers; (3) assembling stacks of sliced tomatoes, pickles and onions to be used to dress hamburgers; (4) setting up the expeditor's line; (5) taking sheets of premade brownies, breaking them down into smaller pieces, wrapping them in plastic and labeling them; (6) cleaning and setting up the salad station in the kitchen, which involved making and wrapping salads, filling condiments, and cleaning out the ice tray; (7) stocking the server stations with plates, glasses, and silverware; (8) rolling silverware; (9) cutting lemons and limes; (10) stocking to-go containers; (11) cleaning and breaking down the expeditor's line, soup station, and salad area; and (12) assembling children's dessert cups. **Ex. C**, SAC, at ¶¶ 6,10**.**

As alleged in the SAC, non-tipped side work is produced in mass quantities and not for a specific customer, table, or section. Id. at ¶ 11. Many of the side work duties assigned are performed in the back of the house. Id. at ¶ 9. In addition, the SAC states that non-tipped side work is being performed during periods when the restaurant is not open or before a tipped employee is assigned tables to service, periods when tipped employees cannot receive tips. Id. at ¶¶ 7, 8, 9. Specifically, at the start of the shift, tipped employees perform an hour to two hours of side work with additional side work at the end of a shift. Id. Plaintiffs' SAC alleges that as a

result of Defendants' practice of assigning non-tipped side work to a tipped employee at the start and end of their shift, tipped employees spend in excess of 20 percent of their time engaged in a dual job. Id. at ¶ 9. Additionally, each individual Plaintiff alleged that they performed non-tipped side work, in excess of 20 percent of their time at work, and was compensated at a the tipped minimum wage rate during these periods. Id. at ¶¶ 9, 196, 212, 227, 242.

The facts, taken in their totality, demonstrate that the non-tipped work performed by tipped employees was not occasional or inconsequential. Accordingly, Defendants violated the DOL's 20 percent standard entitling Plaintiffs to relief for said violations.

Despite Defendants' contentions, compliance with the DOL's 20 percent standard would not impose a "monstrous" record-keeping obligation.  Recently, Defendants have started to use their point of sale system to track some of the non-tipped work performed by tipped employees. **Ex. D**, Declaration of Dominique Greene, at ¶ 5. When tipped employees arrive at Friday's restaurants prior to the start of their shift, tipped employees use Defendants' point of sale system to log in under a job code which compensates them at the minimum wage rate or higher. Id. at ¶¶ 5-7. After performing side work, tipped employees punch in under the relevant tipped job code where they earn the tipped minimum wage. Id. at ¶¶ 5-7. Defendants attempt to persuade the Court that the 20 percent standard is one of complicated time keeping requirements where tipped employees constantly punch in and out. The reality is not only manageable, but being implemented, to some extent, at Friday's restaurants. Although Defendants' point of sale system always possessed the ability to perform these functions, Defendants only implemented this procedure in response to this lawsuit.

As a result, Plaintiffs respectfully request that this Court, (1) recognize the DOL's 20 percent standard as a cognizable cause of action; and (2) deny Defendants' motion to dismiss Plaintiffs' minimum wage claims in the SAC to the extent it relies on the 20 percent standard.

### III. DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED AS PREMATURE.

As Plaintiffs have not moved for certification on their off-the-clock claims, Defendants' attempt to preemptively strike Plaintiffs' off-the-clock allegations is procedurally premature. Moreover, Defendants' argument that the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) creates a new generally applicable rule of predominance is incorrect. As a result, Defendants' request to strike Plaintiffs' off-the-clock class allegations must be denied out of hand.

"Motions to strike are 'generally looked upon with disfavor and a motion to strike class allegations ... is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of ... litigation ... before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Hamadou v. Hess Corp.,* No. 12 Civ. 0250 (CM) (JLC), 2013 WL 164009, at*17 (S.D.N.Y. Jan. 16, 2013) (*citing Wang v. The Hearst Corporation,* No. 12 Civ. 793 (HB), 2012 WL 2864524, at *3 (S.D.N.Y. July 12, 2012)); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) (dismissing defendants' motion to strike as premature because it was prior to discovery and prior to a motion for certification). "Motions to strike are also usually denied where they raise arguments that would be considered on a motion for class certification." *Chenensky v. New York Life Ins. Co.,* No. 07 Civ. 11504 (WHP), 2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011) (denying defendants motion to strike prior to discovery even where plaintiff's pleadings indicate plaintiff may have difficulty meeting Rule 23's "predominance" requirement).

To date, the parties have engaged in very limited discovery. Such discovery has not focused on Plaintiffs' off-the-clock allegations. Without further investigation, Defendants cannot say with any certainty that Plaintiffs' off-the-clock claims would require individual inquiry or that damages are incapable of measurement on a classwide basis. Plaintiffs are entitled to conduct the necessary discovery and move for class certification if applicable. *See Chenensky*, 2011 WL 1795305 at *4 ("Although class discovery may fail to resolve Chenensky's [plaintiff's] predominance problems, it may also inform the drawing of class boundaries that obviate the need for individual proof").

Moreover, the facts in Plaintiffs' SAC sufficiently allege that Defendants maintain a single integrated enterprise which implements a *policy and practice* whereby tipped workers are encouraged by their managers to perform work off-the-clock in order to prevent their time cards from reflecting overtime hours. *See* **Ex. C**, SAC, at ¶¶ 15,16 (emphasis added).

Such allegations clearly indicate that Defendants perpetrated this policy throughout all of Defendants' Friday's restaurants. Additionally, each named plaintiff identified the same situations where off-the-clock work occurred, at the start and end of their shift, before and after service. Id. at ¶¶ 197, 198, 213, 214, 228, 229, 243, 244. Although not alleged in Plaintiffs' SAC, after limited discovery, Plaintiffs are now aware that Defendants use the same time keeping system at all Friday's locations. Taken in totality, the allegations in Plaintiffs' SAC establish sufficient factual matter indicating that all tipped employees were subject to off-the-clock work and plausibly entitled to damages for said violations.

Aside from being premature, Defendants' motion is further based on a misguided reading of *Comcast*. In *Comcast*, the Supreme Court found that the Third Circuit had inappropriately approved certification of a class of current and former cable subscribers seeking damages for

17

alleged violations of federal antitrust laws. Although the plaintiffs had issued several theories of antitrust impact, the District Court accepted only one theory to proceed on a classwide basis. *Comcast*, 133 S.Ct. at 1430-1431. In its decision, the Supreme Court focused on the fact that the damages model offered by plaintiffs failed to measure damages resulting from the particular antitrust injury on which liability was premised. *Id*. at 1433. As a result of that failure, the court found that plaintiffs had failed to meet Rule 23(b)(3)'s predominance requirement. *Id*.

*Comcast* does not change the well-settled principle that proof of classwide damages is not a prerequisite to certification except, arguably, in antitrust cases where classwide injury ("antitrust impact") is an element of liability. "Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal." *Id*. at 1437 (Ginsburg and Breyer, JJ., dissenting) (citations omitted). Because *Comcast* does not repudiate this precedent, the *Comcast* "decision should not be read to require, as a prerequisite to certification, that damages attributable to a classwide injury be measurable 'on a class-wide basis.'" *Id*. at 1436 (Ginsburg and Breyer, JJ., dissenting).

Additionally, since *Comcast,* courts have refused to read the decision as broadly as Defendants' would suggest. In *Clark v. Honey-Jam Café, LLC*, a wage and hour case, the Seventh Circuit refused to review the District Court's class certification order, which rejected the employer's argument that individualized questions concerning damages predominated and therefore precluded certification. **Ex. E,** *Clark v. Honey-Jam Café, LLC*, No. 11 Civ. 4832, ECF No. 69 (N.D. Ill. Apt. 22, 2013).

In *Harris v. comScore, Inc.*, No. 11 Civ. 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) the court certified a class under various computer privacy statutes over the defendants' objection that individual damages defeated predominance. *Id*. at *10. Even after *Comcast*, the court held

that "individual factual damages issues do not provide a reason to deny class certification when the harm to each plaintiff is too small to justify resolving the suits individually . . . ." *Id.* at *10 (citing *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012)). It remains true that "it is far more efficient to resolve all of the common issues in a single proceeding, and then to hold individual hearings on damages if necessary, than it would be to litigate all of the common issues repeatedly in individual trials." *Id.*

Likewise, citing the *Comcast* dissent, the court in *In re Motor Fuel Temperature Sales Practices Litigation*, MDL No. 1840, 2013 WL 1397125, at *18 (D. Kan. April 5, 2013), brushed aside the argument that *Comcast* precluded certification under Federal Rule of Civil Procedure 23(c)(4) just because damages may require some individualized proof. It correctly held that "[t]he possibility that individual issues may predominate the issue of damages . . . does not defeat class certification by making [the liability] aspect of the case unmanageable." *Id.* (*quoting In re Urethane Antitrust Litig.,* 251 F.R.D. 629, 633 (D. Kan. 2008)). Citing the Advisory Committee Notes, the court also correctly suggested that the result would be the same under Federal Rule of Civil Procedure 23(b)(3) because, if liability is found on a classwide basis, class certification is appropriate despite the need for "separate determination of the damages suffered by individuals within the class." *Id.*

To bolster their argument, Defendants rely on *Roach v. T.L. Cannon Corp.*, No. 10 Civ. 0591 (TJM) (DEP), 2013 WL 1316452 (N.D.N.Y. Mar. 29, 2013)). There the court found that the damages were individualized based on evidence that "some employees, on various occasions, were denied their 10-hour spread payments…" *Id.* at *3. Despite this finding, the court provided no substantive analysis into its reliance on *Comcast*. Most importantly, in *Roach*, the  parties were able to conduct discovery and move for certification. Here, Defendants cannot say with any

certainty that damages would require individual inquiry.[5] Moreover, Plaintiffs must be given an opportunity to put forward a damages model.

Additionally, *Comcast* does not create heightened pleading standards. As such, allegations in Plaintiffs' SAC contains sufficient factual matter indicating that tipped employees across the board were subject to the same policy and procedure whereby they were required to work off-the-clock and not compensated for said work. At this juncture of the litigation, that should be deemed sufficient for Plaintiffs' off-the-clock allegations to proceed to discovery and any arguments related to *Comcast,* are better reserved for a motion opposing Rule 23 certification.

## IV.   Prior To 2011, The New York Labor Law Required Employers To Meet Certain Preconditions Prior To Availing Themselves Of The Tip Credit Minimum Wage Rate.

Despite Defendants' contentions, the New York Labor Law ("NYLL") has continuously required employers to meet certain preconditions prior to availing themselves of the tip credit minimum wage rate. Moreover, Plaintiffs' SAC not only alleges that tipped employees' wage statements were inaccurate, but supporting exhibits attached to the SAC demonstrate that Defendants compensated tipped employees *below* the tip credit rate permitted in New York. Thus, under the circumstances, Friday's pre 2011 wages statements could not have been accurate as tipped employees were paid at the inaccurate tipped minimum wage rate.

Prior to 2011, the NYLL required employers to "furnish to each employee a statement with every payment of wages listing ... allowances ... claimed as part of the minimum wage...."

---

[5]     Defendants also rely on *RBS Citizens, N.A. v. Ross*, No. 12 Civ. 165, 2013 WL 1285303 (2013). Although the Supreme Court vacated and remanded a decision certifying an off-the-clock class in light of *Comcast*, there is no indication what the outcome will be. Until the Seventh Circuit has ruled, their prior decision is persuasive. *See Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 550-51 (S.D.N.Y. 2011) (recognizing persuasive authority of an earlier Circuit decision, despite Supreme Court's granting, vacating and remanding order).

N.Y. Comp.Codes R. Regs. tit. 12, § 137–2.2 ("NYCRR"). *See Gunawan v. Sake Sushi Restaurant*, No 09 Civ. 5018 (JO) 2012 WL 4369754, at *4 (S.D.N.Y. Sept. 24, 2012) (identifying §§ 137–2.1 and 2.2 as prerequisites to the tip credit).

Additionally, employers were required to "maintain and preserve for not less than six years weekly payroll records which shall show for each employee ... allowances ... claimed as part of the minimum wage...." *Id.* Case law clearly states that a failure to comply with these requirements prohibits an employer from claiming a "tip allowance" under the NYLL. *See Monterossa v. Martinez Restaurant Corp.*, No. 11 Civ. 369 (JMF), 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) (granting plaintiffs' motion for summary judgment on plaintiffs' minimum wage claims because defendants did not comply with §§ 137–2.1 and 2.2); *Angamarca v. Pita Grill 7 Inc.*, No 11 CIV. 7777 (JGK) (JLC), 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012) (identifying section 137-2.2 as a prerequisite to taking the tip credit); *Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316 (DLC), 2012 WL 3133547, at *5 (S.D.N.Y. Aug. 1, 2012) ("Prior to that date [January 1, 2011], however, the NYLL impose[d] certain notice requirements on employers that [were] strict prerequisites to taking [tip credits]"(referencing §§ 137–2.1 and 137–2.2)) (internal quotations omitted); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011) (finding that defendants could not avail themselves of tip credit minimum wage as both the pay statements and the payroll records showed only that plaintiffs earned tip-related income and did not show that any of the tip income was claimed as part of the minimum wage); *Lanzetta v. Florio's Enterprises, Inc.*, 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011) ("Even if defendants had intended to take a tip credit, they would not have been entitled to do so. Both state and federal law impose certain notice requirements on employers that are 'strict' prerequisites to taking such credits") (Chin, J); *Padilla v. Manlapaz*, 643 F. Supp.

21

2d 302, 310 (E.D.N.Y. 2009) ("Defendants concede that they failed comply with both requirements [§§ 137–2.1 and 2.2], and, therefore, they are not entitled to claim either of the allowances…").

As a matter of law, §§ 137–2.1 and 137–2.2 are clear prerequisites to an employers' ability to avail itself of the tip credit minimum wage. Here, Defendants fail to comprehend that, prior to 2011, Plaintiffs' take issue with the statement of wages provided to tipped employees and the records maintained by Defendants. This issue is substantially different from whether Defendants provided tipped employees with notice of the tip credit minimum wage as required under the FLSA.

Prior to 2011, Defendants failed to provided  tipped employees with wage statements listing allowances claimed as part of the minimum wage as required by NYCRR §§ 137–2.1 and 137–2.2. **Ex. C**, SAC, at ¶ **13.** Plaintiffs' SAC specifically alleges that Defendants failed to furnish tipped employees with accurate statements of wages including the claimed tipped allowance. Id. at ¶¶ 185 (k), 206, 221, 236, 251. To support this proposition, Plaintiffs' SAC attaches paystubs provided to Plaintiffs prior to 2011 which not only show Defendants violated §§ 137–2.1 and 137–2.2, but that Defendants also egregiously compensated tipped employees *below* the appropriate tip credit rate. Id. at Ex. A. In addition, Plaintiffs' SAC also alleges that Defendants failed to keep accurate records of Plaintiffs' wages. Id. at ¶¶ 205, 220, 235, 250. As a result, Plaintiffs' SAC sufficiently alleges that Defendants failed to comply with §§ 137–2.1 and 137–2.2. Since the regulations are clearly prerequisites to utilizing the tip credit, the violation alleged in Plaintiffs' SAC infer that Plaintiffs are entitled to the full minimum wage.

Accordingly, Plaintiffs' respectfully request that the Court deny Defendants' request to dismiss the SAC to the extent it relies on Defendants' failure to meet the requirements of §§ 137–2.1 and 137–2.2.

## V.   PLAINTIFFS' SAC SUFFICIENTLY ALLEGES FACTS DEMONSTRATING THAT THE DEFENDANTS WERE PART OF A SINGLE INTEGRATED ENTERPRISE AND THAT EACH NAMED DEFENDANT WAS AN EMPLOYER AND/OR JOINT EMPLOYER WITHIN THE MEANING OF THE FLSA.

Plaintiffs' SAC sufficiently alleges that Defendant Riese, operated and controlled each of the Friday's Restaurants in Manhattan. Additionally, the SAC identifies that Riese used the named subsidiaries, including the entities Defendants now move to dismiss, to carry out the illegal policies and procedures at each of the Friday's locations. The allegations in Plaintiffs' SAC, taken as a whole, indicate that Defendants are an integrated enterprise. As an integrated enterprise, all Defendants would be considered employers and/or joint employers within the meaning of the FLSA.

An employer is defined broadly under FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Cruz v. Rose Associates, LLC*, No. 13 Civ. 0112 (JPO), 2013 WL 1387018, at *2 (S.D.N.Y. Apr. 5, 2013) (*quoting* 29 U.S.C. § 203(d)). The FLSA's definition of "employer" may apply to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," 29 U.S.C. §§ 203(a), (d), and the DOL's regulations promulgated under the FLSA state that an individual may be employed by more than one entity. *Perez*, 2013 WL 749497, at *3. "[F]ederal regulations and [Second Circuit] precedent recognize the possibility of joint employment for purposes of determining FLSA responsibilities." *Pereyra v. Fancy 57 Cleaners, Inc.*, No. 11 Civ.

1522 (RJS), 2013 WL 1385205 at *4 (S.D.N.Y. Mar. 20, 2013) (*quoting Barfield v. N.Y.C. Health & Hosps. Corp.,* 537 F.3d 132, 141 (2d Cir.2008)).

To determine whether a party is a joint employer, courts apply the "economic reality" test, a "flexible" standard meant to take into consideration the "totality of the circumstances." *Id.* (*quoting Barfield,* 537 F.3d at 141-42). Under the "economic reality" test, relevant factors include whether the entity: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132, 139 (2d Cir.1999) (*quoting Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984)). Accordingly, an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours or pay them. *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 258 (S.D.N.Y. 2012) (internal quotations omitted).

A district court is also free to consider any other facts it deems relevant to its assessment of the economic realities. *Perez*, 2013 WL 749497, at *8. In short, there is "no rigid rule for the identification of an FLSA employer," but rather the determination of the relevant factors in any given case must be made on a case-by-case basis. *Cruz*, 2013 WL 1387018, at *3 (*quoting Barfield,* 537 F.3d at 143).

A "single employer" situation exists where two nominally separate entities are actually part of a single integrated enterprise. *Clinton's Ditch Coop. Co. v. NLRB,* 778 F.2d 132, 137 (2d Cir. 1985). "There is well-established authority under this theory that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part

of the single integrated employer." *Perez*, 2013 WL 749497, at *7 (*quoting Arculeo v. On–Site Sales & Mktg., LLC,* 425 F.3d 193, 198 (2d Cir.2005)). In determining whether multiple defendants constitute a single employer, courts consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Id.* Thus, on a motion to dismiss, the relevant inquiry is whether a defendant has been put "on notice of the theory of employer liability."  *Id.* (*quoting Addison v. Reitman Blacktop, Inc.,* 283 F.R.D. 74, 84 (E.D.N.Y.2011)).

Plaintiffs' SAC alleges that Defendant Riese has owned and/or operated the ten Friday's at issue in this matter. **Ex. C**, SAC, at ¶ 4. Along with Riese, the moving Defendants are alleged to jointly employ Plaintiffs. Id. at ¶ 48**.** Additionally, Plaintiffs' allege that Riese maintained control, oversight and discretion over Plaintiffs and similarly situated employees, including the ability to hire, fire and discipline, and implemented common policies and procedures consistently throughout the Friday's restaurants. Id. at ¶¶ 58-61. Riese's control over the Friday's restaurants is evident from its employee manual which outlines policies related to tipped employees including termination, minimum wage and overtime compensation, and general appearance. Id. at ¶¶ 58-59. Employee manuals were supplied to all tipped employees at each of the Friday's locations. Id. at ¶ 58. Although there were ten Friday's locations in total, tipped employees were permitted to transfer between locations without retraining. Id. at ¶ 60.

Despite maintaining nine separate subsidiaries, the existence of these subsidiaries is irrelevant.  Riese maintained the real power and control over tipped employees.  This is evident by the fact that regardless of which location Plaintiffs worked at, the violations maintained the same, including being compensated *below* the tipped minimum wage rate. Id. at ¶ 13. In addition, for each entity Defendants are attempting to dismiss from the instant action, Plaintiffs have

alleged that each maintained control, oversight and discretion over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them. Id. at ¶¶ 105, 117, 139.[6] Accordingly, regardless of which location a tipped employee worked at, the ultimate benefit could be directly traced to Riese as Defendants were an integrated enterprise. *See Perez*, 2013 WL 749497, at *7-8 (denying defendants' motion to dismiss a corporate entity where plaintiffs did not work because defendants were an integrated enterprise).

Moreover, the situation at bar is distinguishable from *Lopez v. Acme American Environmental Co.*, No. 12 Civ. 511 (WHP), 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012). There, in finding that the moving defendants did not meet the "economic reality" test, the court relied, in part, on the fact that plaintiffs alleged no theory under which the non-moving parties acts could be imputed on the moving defendants. *Id*. at 2012 WL 6062501 at *4. Here, Plaintiffs' SAC alleges a large corporate umbrella where Riese controls all aspects of employment for tipped employees. The subsidiaries are so intertwined with Riese that the group of entities are essentially operating as one.

A similar result would be found in comparison to *Paz v. Piedra*, No. 09 Civ. 03977 (LAK), 2012 WL 121103 (S.D.N.Y. Jan. 12, 2012). In *Paz*, the court found joint and several liability amongst the individual defendants who had formal and functional control over workers at four separate restaurants. *Id*. at *6. Moreover, unlike *Paz*, all Friday's restaurants are linked together through Riese. The SAC alleges that Friday's restaurants shared the same policies, time

---

[6]     Defendants also mention in foot note no. 22, that the SAC fails to allege that "particularized facts" regarding Plaintiff Akinmurele's employment with Union Square Operating, Inc. however, Defendants have not formally asked the Court to dismiss claims against that entity. Regardless, the SAC defines Defendants as encompassing all named entities and Plaintiff Akinmurele alleges that all Defendants failed to pay her appropriately. **Ex. C,** at ¶¶ 48, 207-21.

keeping system, shared employees, and violations of the NYLL and FLSA. Taken together, the instant facts are undeniably distinguishable from the minimal common elements found in *Paz*.

Additionally, once the Court has concluded the issues raised in Defendants' motion, Plaintiffs plan on moving for conditional certification and issuance of court authorized notice pursuant to 29 U.S.C. § 216(b) for all Friday's restaurants operated by Riese. *See Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *n1 (S.D.N.Y. June 1, 2012) (permitting conditional certification to restaurants where plaintiff had not worked because plaintiff had alleged that the restaurants were jointly owned and operated as a common enterprise); *Karic v. The Major Automotive Companies, Inc.*, 799 F.Supp.2d 219, 227 (E.D.N.Y. 2011) (permitting notice to car dealerships where plaintiffs did not work since plaintiffs' declarations indicated the "same pattern of behavior as to all Major World entities"); *Capsolas, et al. v. Pasta Resources, Inc.*, No. 10 Civ. 5595 (RJH), 2011 WL 1770827 (S.D.N.Y. May 8, 2011) (authorizing notice to all of defendants' restaurants, including those where plaintiffs had not worked, because the restaurants shared a common ownership); *see also Garcia v. Pancho Villa's of Huntington Vill.*, 678 F. Supp. 2d 89 (E.D.N.Y. 2010) (court certified class of restaurant workers across three restaurants, even though all of the named plaintiffs worked at the same restaurant). Although Plaintiffs' sufficiently allege that Riese is the overarching employer, dismissal of the moving subsidiaries would frustrate the process and interfere with potential plaintiffs from exercising their rights.

Accordingly, Plaintiffs' SAC sufficiently alleges that the moving Defendants are employers and/or joint employers or integrated employers within the meaning of the FLSA. As a result, the moving Defendants should not be dismissed from the instant action.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion in its entirety. However, should the Court find portions of Plaintiffs' SAC unacceptable, Plaintiffs' respectfully request an opportunity to amend the SAC to address any deficiencies this Court finds.

Dated: New York, New York
      May 3, 2013

                                      Respectfully submitted,

                                      FITAPELLI & SCHAFFER, LLP
                                      By:

                                      /s/ Joseph Fitapelli
                                      Joseph A. Fitapelli

                                      **FITAPELLI & SCHAFFER, LLP**
                                      Joseph A. Fitapelli
                                      Brian S. Schaffer
                                      Eric J. Gitig
                                      Frank J. Mazzaferro
                                      475 Park Avenue South, 12th Floor
                                      New York, New York 10016
                                      Telephone: (212) 300-0375