**FITAPELLI & SCHAFFER, LLP**
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CISSE DIOMBERA, YETUNDE AKINMURELE, TELAE MOORE, and CHRISTINE WILLIAMS, on behalf of themselves and all others similarly situated,**<br><br>        **Plaintiffs,**<br><br>    **-against-**<br><br>**THE RIESE ORGANIZATION, INC., 1552-TGI, INC., TAFT FRIDAY 50TH ST. LLC, 677 LEX TGI, INC., GOURMET MANAGEMENT CORP., 484 8TH OPERATING INC., 47 REALOPP CORP., NATIONAL 42ND STREET REALTY, INC., NO. 604 FIFTH AVENUE RESTAURANT, INC., UNION SQUARE OPERATING, INC.,**<br><br>        **Defendants.** | **12 Civ. 8477 (RJS)(HBP)** |

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................1

PROCEDURAL BACKGROUND......................................................................................1

I.      OVERVIEW OF INVESTIGATION .....................................................................1

II.     PRE-ANSWER DISPUTES ...................................................................................1

III.    PRE-MEDIATION DISCOVERY & MEDIATION................................................2

IV.     DEFENDANTS' MOTION TO DISMISS AND CONTINUED SETTLEMENT
        DISCUSSIONS .....................................................................................................3

SUMMARY OF THE SETTLEMENT TERMS ..............................................................5

I.      THE SETTLEMENT FUND ..................................................................................5

II.     ALLOCATION FORMULA ...................................................................................5

III.    RELEASE OF CLAIMS.........................................................................................6

IV.     FACTORS CONSIDERED IN THE SETTLEMENT OF THE CLAIMS ...............6

V.      CLASS MEMBERS' RESPONSE TO SETTLEMENT ..........................................6

ARGUMENT ...................................................................................................................7

I.      THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED.....................7

        A.      The Proposed Settlement Class Should Be Certified.....................................7

        B.      The Proposed Settlement Is Fair, Reasonable, And Adequate, And
                Should Be Approved.....................................................................................7

                1.      The Settlement Is Procedurally Fair And Should Be Approved..........8

                2.      The Settlement Is Substantively Fair And Meets the *Grinnell* Standards
                        For Class Action Settlement Approval. ..............................................9

                        a)      *Litigation Through Trial Would Be Complex, Costly, And Long
                                (Grinnell Factor 1).* ...........................................................9

                        b)      *The Reaction Of The Class Has Been Positive (Grinnell Factor 2).* ............10

                        c)      *Discovery Has Advanced Far Enough To Allow The Parties To
                                Responsibly Resolve The Case (Grinnell Factor 3).*....................10

                        d)      *Plaintiff Would Face Real Risks If The Case Proceeded (Grinnell
                                Factors 4 and 5).* .............................................................12

   e) *Establishing A Class And Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6).* ....................................................................12

   f) *Defendants' Ability To Withstand A Greater Judgment Is Not Assured (Grinnell Factor 7).* ....................................................................13

   g) *The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Grinnell Factors 8 and 9).* .............13

II. THE COURT SHOULD ISSUE FINAL APPROVAL OF THE FLSA SETTLEMENT. ....................................................................14

III. A SERVICE AWARD SHOULD BE AWARDED TO THE NAMED PLAINTIFFS ....15

IV. CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED. ....................................................................17

  A. <u>The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund</u> ....................................................................18

   1. Class Counsel's Time And Labor ....................................................18

   2. The Litigation's Magnitude And Complexity ..................................19

   3. The Risks Of Litigation ..................................................................20

   4. Quality Of The Representation ........................................................21

   5. The Fee Is Reasonable In Relation To The Settlement ....................22

   6. Public Policy Considerations ..........................................................23

  B. <u>The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund</u> ....................................24

  C. <u>Class Counsel Is Entitled To Reimbursement Of Their Litigation Expenses</u> ..........25

<u>CONCLUSION</u> ....................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Case Name** .......................................................................................**Page Number**

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945)..............................................................23

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010)  ............................22

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000).........11, 13

*Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728 (1981) .........................................19

*Beckman v. Keybank, N.A.*,
    No. 12 Civ. 7836 (RLE), 2013 WL 1803736  (S.D.N.Y. Apr. 29, 2013)  ...................... *passim*

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)........................................................ 10-11

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).............................................. *passim*

*D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001)  ........................................................8

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...............................22

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ..........................................................23

*Diaz v. Eastern Locating Serv., Inc.*,
    No. 10 Civ. 04082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) ...............................23

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)...........................................11, 13

*Gilliam v. Addicts Rehab Crt. Fund*,
    No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. March 24, 2008)................................14

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)........................................... *passim*

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) .......................21, 24

*Hernandez v. Merrill Lynch & Co., Inc.*,
    No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013)................17, 22

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180 (S.D.N.Y.2003) .................25

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) ..........................................................12

*Johnson v. Brennan*,
    No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011).......................... *passim*

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............................24

*Lovaglio v. W & E Hospitality Inc.*,
  No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012) ............................ *passim*

*Lynn's Food Stores, Inc. v. U.S.*, 279 F.2d 1350 (11th Cir. 1982) ................................15

*Maley v. Del Global Techs.Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y.  2002) ...................................21

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (S.D.N.Y. 2007) .................22, 23

*Matheson v. T-Bone Rest., LLC*,
  No. 09 Civ. 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ........................ *passim*

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ...................................18

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984)...............................15

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08 Civ. 8713 (PGG), 2010 WL 2399328 (S.D.N.Y. Mar.3, 2010) ...................................15

*New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*,
  No. 05 Civ. 11148 (PBS), 2009 WL 2408560 (D. Mass. Aug. 3, 2009)  ...............................24

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)...........................................................13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................................14

*In re Penthouse Executive Club Comp. Litig.*,
No 10 Civ. (KMW), 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014)  .................................17

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)  ...................................................23

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
  No. 11 Civ. 520 (JLC), 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)  .....................................24

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. April 16, 2012)...............10, 11, 16, 23

*Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780 (9th Cir. 2007) ...................................24

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y.1999) .............................................23

*Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).....20, 21

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
  No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004).................................14

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................7, 12

*Tiro v. Public House Investments, LLC*,
    Nos. 11 Civ. 7679 (CM) *et al*, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ................ *passim*

*Velez v. Majik  Cleaning Serv.*,
    No. 03 Civ. 8698 SAS)(KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .......................16

*Velez v. Novartis Pharmaceuticals Corp.*,
    No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)..................................8

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .......................................................24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ...............................*passiM*

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693(PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ........................ *passim*

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ..........................................10

**Statutes**............................................................................................**Page Number**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

29 U.S.C. § 216(b) ................................................................................................. *passim*

## INTRODUCTION

Plaintiffs Cisse Diombera, Yetunde Akinmurele, Telae Moore, and Christine Williams (collectively, "Plaintiffs")  submit this memorandum of law in support of their motion for final approval of a proposed settlement in this wage and hour class/collective action brought on behalf of tipped workers who have worked at the TGI Friday's restaurants in Manhattan operated by The Riese Organization, Inc., 1552-Tgi, Inc., Taft Friday 50th St. LLC, 677 Lex Tgi, Inc., Gourmet Management Corp., 484 8th Operating Inc., 47 Realopp Corp., National 42nd Street Realty, Inc., No. 604 Fifth Avenue Restaurant, Inc., Union Square Operating, Inc. (collectively "Defendants" or "Friday's")**.**  The parties' $2,856,700[1] settlement resolves all claims before this Court, pursuant to the proposed compromise set forth in the Joint Settlement Agreement and Release ("Settlement Agreement"), and satisfies all criteria for final approval.

## PROCEDURAL BACKGROUND

### I.    OVERVIEW OF INVESTIGATION

Prior to initiating the instant action, Class Counsel conducted investigations, including factual investigation and legal research on the underlying merits of the class claims, the proper measure of damages, and the likelihood of class certification. Fitapelli Decl. ¶ 4. Class Counsel conducted in-depth interviews with Plaintiff, opt-ins, and Class Members to determine their hours worked, their wages paid, the nature of their duties, and other relevant information. *Id.* ¶ 5. Class Counsel also obtained and reviewed hundreds of pages of documents from clients. *Id.* ¶ 25.

### II.   PRE-ANSWER DISPUTES

After filing Plaintiff's Complaint, Plaintiff went live with www.tgifridayslawsuit.com to raise awareness of the instant action. *Id.*  ¶ 9. Defendants quickly took issue with the website and

---

[1]     For an explanation as to why the settlement amount was increased from $2,836,000 to $2,856,700, please see the Declaration of Joseph A. Fitapelli ("Fitapelli Decl.") ¶¶ 46-51.

several letters were exchanged between the parties and the Court as Defendants attempted to have the site taken offline. *See Id.* ¶¶ 10-14. In addition, on January 2, 2013, Defendants asked the Court for a pre-motion conference to discuss potentially filing a motion to dismiss Plaintiff's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* ¶ 15. In response to Defendants' letter, Plaintiff filed an Amended Complaint on January 7, 2013. *Id.* ¶ 16. Despite Plaintiff's amendment, Defendants renewed their request for a pre-motion conference. *Id.*

On January 22, 2013, the parties attended a conference with the Honorable Richard J. Sullivan to discuss issues related to www.tgifridayslawsuit.com and Defendants' proposed motion. *Id.* ¶ 17. Defendants raised several issues with Plaintiff's Amended Complaint. *Id.* At the conclusion of the conference, Plaintiff was permitted to amend her Complaint for a second time to address some of the factual issues Defendants had raised and Defendants were permitted to file their motion. *Id.* ¶ 18.

On February 5, 2013, Plaintiffs filed a Second Amended Complaint. *Id.* ¶ 20. The Second Amended Complaint added additional facts to support Plaintiff's claims, causes of actions for a tip misappropriation and failure to pay uniform maintenance fees as well as three additional Plaintiffs as class representatives: Yetunde Akinmurele, Telae Moore and Christine Williams. *Id.* Collectively, with Plaintiff Diombera, the named Plaintiffs had worked at a total of 5 of the 10 Friday's restaurants in Manhattan. *Id.*

## III.   PRE- MEDIATION DISCOVERY & MEDIATION

On February 13, 2013, the parties notified the Court that they had agreed to attend mediation in an effort to resolve the instant matter. *Id.* ¶ 21. In preparation for the mediation, the parties engaged in discovery of Plaintiffs' claims. *Id.* ¶ 22. Defendants served interrogatories and document demands on the five named Plaintiffs. *Id.* In response, each named plaintiff searched

their records for responsive documents and attended meetings with Counsel. *Id.*  Plaintiffs responded with hundreds of documents including, paystubs, e-mails, handbooks, and schedules. *Id*. Defendants supplied Plaintiffs with employee folders, handbooks, tip records, side work charts, and compensation records for Plaintiffs, as well as payroll data and dates of employment for thousands of Class Members that had worked at 5 of the 10 Friday's. *Id.* ¶ 23.

Plaintiffs' Counsel continued to meet with named Plaintiffs and opt-in Plaintiffs regarding Defendants' time keeping practices, side work, and compensation policies. *Id.*  ¶ 25. Plaintiffs' Counsel also continued to receive and review discovery from opt-in Plaintiffs concerning Defendants' policies and practices. *Id.* After analyzing and digesting thousands of documents and Class Members' data, Plaintiffs' Counsel was able to prepare a class-wide damages analysis and draft a comprehensive mediation statement. *Id.* ¶ 26.

On May 21, 2013, the parties participated in a full-day mediation with Ruth Raisfeld, Esq., an experienced employment law mediator. *Id.* ¶ 27.  Even though a settlement was not reached at the mediation, the parties continued to engage in an open dialogue in an effort to resolve the case. *Id.* ¶ 29.  In addition, the mediation allowed the parties to better assess the strengths and weaknesses of their case, and helped develop a framework for ongoing settlement negotiations. *Id.*

## IV.   DEFENDANTS' MOTION TO DISMISS AND CONTINUED SETTLEMENT DISCUSSIONS

On April 12, 2013, Defendants filed their Motion to Dismiss, in part, Plaintiffs' Second Amended Class Action Complaint. *Id.* ¶ 30. In their motion Defendants asked the Court to, (1) reject Plaintiffs' claim that the tip credit should be invalidated for periods where Plaintiffs spent more than 20% of their time performing allegedly non-tipped duties because it fails to state a claim as a matter of law; (2) dismiss Plaintiffs' off-the-clock class allegations in light of *Comcast*

*v. Behrend*, 133 S.Ct. 1426 (2013); (3) reject portions of Plaintiffs' complaint which allege Defendants violated the NYLL's pre-2011 tipped minimum wage requirements; and (4) dismiss the three Defendants which operated TGI Friday's restaurants in New York where the named Plaintiffs had not worked. *Id.* ¶ 31. On May 3, 2013, Plaintiffs filed their Opposition to Defendants' Motion. *Id.* ¶ 32. On May 13, 2013, Defendants filed their Reply. *Id.*

Although this matter could not be resolved at mediation and despite the pending motion, the parties continued to discuss settlement. *Id.* ¶ 33.  In that respect, Plaintiffs' Counsel had an in person meeting with Defendants' Counsel and had numerous conference calls Defendants.  *Id.* As a result of continued negotiations, Defendants agreed to entertain the possibility of a global settlement on behalf of tipped workers that had worked at all 10 Friday's restaurants. *Id.* In order to facilitate such a settlement, Defendants supplied Plaintiffs with payroll data and dates of employment for the remaining 5 Friday's restaurants so that Plaintiffs could perform a detailed damages calculation. *Id.* ¶ 34.  In addition, Defendants supplied relevant financial documents to demonstrate that a larger judgment would constitute a credible threat to their continued operation. *Id.* ¶ 35.

On June 17, 2013, the parties notified the Court of their agreement in principle and Defendants asked to withdraw their Motion. *Id.* ¶ 36.  On June 18, 2013, the Court granted this request. *Id.* ¶ 37. On July 1, 2013, the parties participated in a phone conference with the Honorable Henry Pitman. *Id.* ¶ 38. After extensive negotiations, the memorandum of understanding was executed on July 22, 2013. *Id.* ¶ 39.  On September 13, 2013, the Settlement Agreement, which provides for $2,856,700 was fully executed by all parties.  *See Id.* ¶ 40.

## SUMMARY OF THE SETTLEMENT TERMS

### I.   THE SETTLEMENT FUND

The Settlement Agreement requires Defendants to make a Gross Settlement Payment ("GSP") of $2,856,700.  *See* **Ex. A**, Settlement Agreement ¶ 3.1(A).  The GSP covers attorneys' fees and costs, class members' awards, service payments to the named Plaintiffs, the Claims Administrator's Fees, all payroll expense taxes, and fees associated with investing and liquidating the GSP.  *Id.* The Rule 23 Class consists of all individuals in the Server, Bartender, Runner, Barback, and Busser job classifications between November 20, 2006 and June 30, 2013, that have worked at 10 TGI Friday's in Manhattan owned/operated by Defendants as defined in the Settlement Agreement.  *Id.* ¶ 1.15.

### II.   ALLOCATION FORMULA

Each Class Member who does not opt-out of the settlement will receive a proportional share of the Net Settlement Fund ("NSF") based on the number of weeks worked by the Class Member during the relevant periods and whether the Class Member previously submitted a written consent to join the FLSA collective action. *Id.* ¶ 3.4.  Specifically, Class Members will be assigned 6 points for every week worked between November 20, 2006 through December 31, 2010, and 1 point for every week worked for the period of January 1, 2011 through June 30, 2013. *Id.*

The lower allocation from January 1, 2011 through June 30, 2013 is due to the fact that Defendants presented evidence establishing that Friday's had modified their wage and hour policies around January 1, 2011.

Class Members who joined the FLSA collective will receive additional half a point in recognition of the risks they incurred by joining the lawsuit and the fact that they affirmatively sought to protect their FLSA rights. *Id.* ¶ 44.

### III.    RELEASE OF CLAIMS

In return for the above consideration, the Settlement Agreement provides that every Class Member who does not timely opt out of the settlement will release Defendants from all wage and hour claims that were or could have been asserted in the litigation on or before the Effective Date.  **Ex. A**, Settlement Agreement ¶ 4.1.  Class Members who do not opt out and who sign their settlement checks will be deemed to have provided their written consents to join the FLSA collective and to have released their FLSA claims. *Id.* Additionally, all Class Members will release any claims they may have against Defendant for attorneys' fees or costs associated with Class Counsel's representation, other than those approved by the Court pursuant to the Settlement Agreement. *Id.* ¶ 4.2.

### IV.    FACTORS CONSIDERED IN THE SETTLEMENT OF THE CLAIMS

Plaintiffs weighed the weaknesses and complexities in this case against the benefit of receiving a large percentage of the damages sought without the risks of trial.  Fitapelli Decl. ¶¶ 42, 43. Class Counsel have thoroughly analyzed Defendants' factual and legal defenses, examined documents and other information produced by Defendants and Class Members, reviewed the defenses and documents with Plaintiff, and assessed the strength of Defendants' arguments. *Id.*  In light of the strengths and weaknesses of the case, Class Counsel believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiff and Class Members in the face of significant obstacles.  *Id.*

### V.    CLASS MEMBERS' RESPONSE TO SETTLEMENT

Pursuant to the Court's Order granting preliminary approval, the Claims Administrator mailed the settlement notice to all 2,610 Class Members.  **Ex. B**, Declaration of Christopher M. Walsh, Esq., Re: Administration of Class Settlement ("Walsh Decl.") ¶¶ 4-11.  The time has

expired for Class Members to opt out of and/or object under the Agreement. **Ex. A**, Settlement Agreement ¶¶ 2.6, 2.7. No Class Members have objected to the settlement and only one Class Member has opted out. **Ex. B,** Walsh Decl. ¶¶ 12,13.  Thus, the overwhelming response to the settlement has been positive.

## ARGUMENT

### I.  THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED

"Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate." *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (RLE), 2013 WL 1803736, at *4 (S.D.N.Y. April 29, 2013) (quoting Fed. R. Civ. P. 23). Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008).  "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

#### A.  The Proposed Settlement Class Should Be Certified

For the reasons set forth in the Court's October 21, 2013 Order, the settlement class satisfies the requirements of Fed. R. Civ. P. 23(a) & (b)(3), and should be finally certified.  *See* Docket. No. 73.

#### B.  The Proposed Settlement Is Fair, Reasonable, And Adequate, And Should Be Approved

In order to approve a class action settlement, a district court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate. *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013) (internal

quotations omitted). "Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

### 1.  The Settlement Is Procedurally Fair And Should Be Approved

A court determines a settlement's procedural fairness by looking at the negotiating process leading to settlement. *See Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *4 (S.D.N.Y. Dec. 13, 2011) (citing *Wal-Mart Stores*, 396 F.3d at 116; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)); *see also Beckman,* 2013 WL 1803736, at *4 (same).  "A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Matheson*, 2011 WL 6268216, at *4.

Here, the settlement was reached after Class Counsel conducted a thorough investigation and evaluated the claims and defenses, and after vigorous negotiations between the parties. Fitapelli Decl. ¶¶ 42, 43.  Additionally, whereas here, the settlement is the by-product of a mediation before an experienced employment law mediator, there is a presumption of fairness and arm's-length negotiations.  *See, e.g., Tiro*, 2013 WL 4830949, at *5  (finding that settlement negotiations were procedurally fair where the parties were represented by knowledgeable counsel, engaged in extensive and contested discovery, and had their negotiations overseen by an experienced mediator); *Beckman,* 2013 WL 1803736, at *4 ("These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.").

### 2. The Settlement Is Substantively Fair And Meets The *Grinnell* Standards For Class Action Settlement Approval

The settlement is substantively fair because its terms are fair, adequate, and reasonable pursuant to the analytical framework set forth by the Second Circuit in *Grinnell* for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).  The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 463; *see also Wal-Mart Stores*, 396 F.3d at 117.

These factors ought not be applied in a formulaic manner.  Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  *Grinnell.*, 495 F.2d at 468.  Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

### a) Litigation Through Trial Would Be Complex, Costly, And Long (Grinnell Factor 1)

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation.  *Tiro*, 2013 WL 4830949, at *5.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL

4357376, at *8 (S.D.N.Y. Sept. 16, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)).

Continued litigation would cause additional expense and delay.  Although there has been significant discovery, additional discovery would be required to establish liability and damages, including depositions of Plaintiffs, Class Members, Defendants, and Defendants' managers.  A fact-intensive trial would be necessary.  Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages would be costly and would further defer closure.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### b)  The Reaction Of The Class Has Been Positive (Grinnell Factor 2).

Where relatively few class members opt-out of or object to the settlement, the lack of opposition supports court approval of the settlement.  *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).  Here, Class Members have shown an enthusiastic response to the settlement. No Class Members have objected to the settlement and only one class member has opted out.  "This favorable response demonstrates that the class approves of the settlement and supports final approval."  *Matheson*, 2011 WL 6268216, at *5 (citing *Johnson*, 2011 WL 4357376, at *9).

### c)  Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (Grinnell Factor 3)

Under the third *Grinnell* factor, the question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir.

10

2001)).  "The Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make ... an appraisal' of the Settlement."  *Sewell*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012) (quoting *In re Austrian*, 80 F. Supp. 2d at 176).    The parties' discovery here meets this standard.

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the extensive discovery already completed is enough to allow the parties to recommend settlement. Plaintiffs obtained thousands of records from Defendants and Class Members, including employee folders, handbooks, tip records, side work charts, and time and compensation records.  *See* Fitapelli Decl. ¶¶ 21-26.  Furthermore, the parties participated in a full-day mediation with Ruth Raisfeld, Esq., an experienced employment law mediator.  *Id.* ¶ 27.

Class Counsel thus entered into the proposed Settlement Agreement with a thorough understanding of Plaintiffs' case.  Such knowledge of the strengths and weaknesses of their case supports a finding that the Settlement Agreement is the result of fair and reasonable negotiation. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005).  In fact, courts often grant final approval of class settlements in cases where the parties conducted the same amount or even less discovery than the amount accomplished in this case.  *See, e.g.*, *Matheson*, 2011 WL 6268216, at *5 (stating that an efficient, informal exchange of information, and participation in a day-long mediation allowed the parties to weigh the strengths and weaknesses of their claims); *Yuzary v. HSBC Bank USA, N.A.,* No. 12 Civ. 3693(PGG), 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) (finding that an informal exchange of information was "sufficient discovery to weigh the strengths and weaknesses of [plaintiffs'] claims"). Therefore, this factor favors final approval.

**d) *Plaintiffs Would Face Real Risks If The Case Proceeded (Grinnell Factors 4 and 5)***

Although Plaintiffs believe their case is strong, it is also subject to considerable risk as to liability and damages.  In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik*, 576 F. Supp. 2d at 579.  Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing," and that "[l]itigation inherently involves risks." *Wal-Mart Stores*, 396 F.3d at 118.  "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Matheson*, 2011 WL 6268216, at \*5 (quoting *In re Ira Haupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969)).

Given the fact-intensive nature of Plaintiffs' claims, a trial on the merits would involve significant risk as to both liability and damages. Plaintiffs may also have difficulty proving the number of hours they worked each week off-the-clock, that Defendants had actual and/or constructive knowledge of these hours, or the amount of side work they performed per shift.  These inquiries would require extensive testimony and discovery regarding Defendants' policies and practices.  While Plaintiffs believe that they could ultimately establish Defendants' liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy.  The proposed settlement alleviates this uncertainty. This factor therefore weighs in favor of final approval.

**e) *Establishing A Class And Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6)***

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not certified the Rule 23 Class yet, and the parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing.  In

opposing class certification, Defendants would likely argue that Plaintiffs worked off-the-clock without Defendants' knowledge, that Plaintiffs spent less than 20% of their shift performing side work, that Plaintiffs' side work claim is not a cognizable claim under federal law and individualized questions preclude class certification.   Although Plaintiffs disagree with these arguments, defendants have prevailed on arguments like these.   *See Beckman*, 2013 WL 1803736, at *11 (listing numerous cases in the Southern District of New York where courts have denied Rule 23 motions and decertified FLSA collectives in misclassification cases).   Risk, expense, and delay permeate such a process.   Settlement eliminates this risk, expense, and delay. *Yuzary*,  2013 WL 5492998, at *7.   This factor also favors final approval.

### f) *Defendants' Ability To Withstand A Greater Judgment Is Not Assured (Grinnell Factor 7)*

Even if Defendants could afford to pay more, a defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."   *Matheson*, 2011 WL 6268216, at *5 (quoting *Frank*, 228 F.R.D. at 186); *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Under these circumstances, this factor weighs in favor of approving the final settlement.

### g) *The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Grinnell Factors 8 and 9)*

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Tiro*, 2013 WL 4830949, at *9 (quoting *Matheson*, 2011 WL 6268216, at *5).   "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"   *Matheson*, 2011 WL 6268216, at *5 (quoting *Frank*, 228 F.R.D. at 186; *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).   "[T]here is no reason, at least in theory, why a

13

satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2; *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of LA v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

Here, the $2,856,700 settlement provides much more than "a fraction of the potential recovery." The settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial, and survived an appeal. Moreover, by Class Counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims. *See* Fitpaelli Decl. ¶ 42. Thus, "weighing the benefits of the settlement against the risks associated with proceeding in the litigation," the settlement amount achieved in the instant action is more than reasonable. *Johnson*, 2011 WL 4357376, at *11; *see Lovaglio*, 2012 WL 2775019, at *2 (approving settlement where "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation").

## II.   THE COURT SHOULD ISSUE FINAL APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs also request that the Court approve the settlement of their FLSA claims. The

standard for approval of an FLSA settlement is significantly lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement. *Yuzary*, 2013 WL 1832181, at *12 (S.D.N.Y. Apr. 30, 2013) (citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353-54, 1353 n.8 (11th Cir. 1982)).

As discussed above, the instant settlement was the result of contested litigation and arm's length negotiation. The parties were represented by counsel experienced in wage and hour law, engaged in strenuous litigation, exchanged extensive discovery and damages calculations, and conducted months of vigorous negotiations in an effort to reach the settlement. Fitapelli Decl. ¶¶ 2-40. Therefore, FLSA approval is warranted. *See Yuzary*, 2013 WL 1832181, at *12 (granting final approval of FLSA settlement); *Matheson*, 2011 WL 6268216, at *6 (same).

## III.   A SERVICE AWARD SHOULD BE AWARDED TO THE NAMED PLAINTIFFS

Pursuant to the Settlement Agreement, and subject to the Court's approval, a $10,000 service fee is to be awarded to each of the named Plaintiffs. This award is reasonable given the significant contributions the named Plaintiffs made to advance the lawsuit. Moreover, no Class Member has objected to this award. **Ex. B,** Walsh ¶ 13.

Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that "[service] awards are particularly appropriate in the employment context" where "the plaintiff is often a former or current employee of the defendant, and thus … he has, for the benefit of the class as a whole, undertaken

15

the risks of adverse actions by the employer or co-workers." *Tiro,* 2013 WL 4830949 at *10;

*Velez v. Majik  Cleaning Serv.*, No. 03 Civ. 8698 (SAS)(KNF), 2007 WL 7232783 (S.D.N.Y.

June 25, 2007); *see also Sewell,* 2012 WL 1320124, at *14 ("Plaintiffs litigating cases in an

employment context face the risk of subjecting themselves to adverse actions by their employer

… [and] being blacklisted as 'problem' employees."). Accordingly, "service awards are common

in class action cases and are important to compensate plaintiffs for the time and effort expended

in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a

litigant, and any other burdens sustained by the plaintiff." *Tiro,* 2013 WL 4830949, at *11

(quoting *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713 (PGG), 2010

WL 2399328, at *9 (S.D.N.Y. Mar. 3, 2010)).

     Here, the Court should grant the requested service awards based on the significant work

that each of the named Plaintiffs undertook on behalf of the Class.  The services provided by the

named Plaintiffs included, but were not limited to, informing counsel of the facts initially and as

the case progressed, providing counsel with relevant documents in their possession, providing

discovery responses, assisting counsel to prepare for mediation and settlement discussions, and

reviewing and commenting on the terms of the settlement. Fitapelli Decl. ¶ 57.

     Most importantly, the named Plaintiffs worked tirelessly to inform putative Class

Members of the lawsuit and encourage them to participate. In total, 37 individuals joined the

lawsuit without the issuance of notice pursuant to 29 U.S.C. ¶ 216(b). *Id.* ¶ 58. While some

individuals contacted Class Counsel through utilizing www.tgifridayslawsuit.com, the vast

majority of opt-ins were referred to Class Counsel by the named Plaintiffs. *Id.*

     Additionally, Plaintiffs took a significant risk by representing Class Members in the

instant action. While information of this nature has always been public, the ease at which such

information is available today leads to a significant risk that the named Plaintiffs would be retaliated against and/or "black balled" in their respective industries. *Id.* ¶ 59.   Despite such risks, the named Plaintiffs actively pursued their claims against Defendants on behalf of the Class. *Id.*

As such, the named Plaintiffs' actions exemplify the very reason service fees are awarded. *See Frank*, 228 F.R.D. at 187 (recognizing the important role that plaintiffs play as the "primary source of information concerning the claim."); *Tiro,* 2013 WL 4830949, at *11 (recognizing efforts of plaintiffs including assisting counsel to prepare for mediation and settlement discussions, and reviewing and commenting on the terms of the settlement).

Moreover, the $10,000 service awards requested here for each of the named Plaintiffs is reasonable and well within the range awarded by Courts in similar matters. *See, e.g., Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives in wage and hour action); *Lovaglio*, 2012 WL 2775019, at *4 (approving service awards of $10,000 to class representatives in wage and hour action); *Matheson*, 2011 WL 6268216, at *9 (approving a service award of $45,000 for a class representative in a wage and hour action); *Yuzary*, 2013 WL 5492998, at *8-9 (approving service awards of $10,000 for class representatives in wage and hour action); *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145 (KMW), 2014 WL 185628, at *11 (S.D.N.Y. Jan. 14, 2014) (awarding $15,000 in service awards for class representatives in wage and hour action).

## IV.   CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Plaintiffs' unopposed motion for Final Approval includes a request for attorneys' fees of one-third of the Fund and reimbursement of $12,883.54 in litigation costs and expenses.   The

Settlement Agreement and Court-approved Notice sent to all Class Members provide that Class Counsel will apply to the Court for attorneys' fees in the amount of  $952,233.33 (33 1/3% of the settlement) and reimbursement of litigation costs and expenses that Class Counsel has incurred.  **Ex. A**, Settlement Agreement  ¶ 3.2(A); **Ex. C,** Settlement Notice at page 5.  To date, no Class Member has objected to these requests.  **Ex B**, Walsh Decl. ¶ 13.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar and percentage of the fund method, "[t]he trend in this Circuit is to use the percentage of the fund method in common fund cases like this one."  *Matheson*, 2011 WL 6268216, at *7 (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)).

### A.   The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund

In determining the reasonableness of fee applications, courts consider the six factors set forth by the Second Circuit in *Goldberger v. Integrated Res., Inc.*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  209 F.3d 43, 50 (2d Cir. 2000).  Here all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

#### 1.  Class Counsel's Time And Labor

Class Counsel's time invested in litigating and settling this case was significant and reasonable.   Fitapelli Decl. ¶¶ 73-80.   Activities conducted by Class Counsel included: interviewing numerous Class Members; obtaining and analyzing thousands of pages of documents related to Defendants' policies and practices; conducting extensive legal research; defending Class Counsel's right to publicize the existence of the lawsuit; attending court

18

conferences; completing a detailed, class-wide damages analysis; preparing for and participating in a full-day mediation; opposing Defendants' motion to dismiss Plaintiffs' Complaint; and successfully negotiating the terms of the settlement. *Id.* ¶¶ 2-40. In addition, following the execution of the Settlement Agreement, Class Counsel has responded to telephone calls and emails from numerous Class Members requesting further information regarding the terms of the settlement, and prepared motions for preliminary and final approval. *Id*. ¶ 73.

In performing these tasks, Class Counsel expended more than 792 hours. *Id.* These hours are reasonable for a complex case like this one. *Id.* ¶ 74. Moreover, Class Counsel anticipates spending additional time in the future preparing for the Fairness Hearing and administering the settlement, and the requested fee award is also meant to compensate for that time. *Id.* ¶ 80; *see, e.g., Matheson*, 2011 WL 6268216, at *9 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.") (citations omitted).

### 2. The Litigation's Magnitude And Complexity

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50. "Courts have recognized that wage and hour cases involve complex legal issues." *Tiro,* 2013 WL 4830949, at * 13 (citation omitted); *see Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law."). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same

action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Johnson*, 2011 WL 4357376, at *17.

This case hinged on several mixed questions of fact and law. In particular, both parties disputed the facts surrounding the amount of side work performed by Class Members, Defendants' knowledge of work performed off-the-clock by Class Members, uniforms provided to Class Members, and the actual hours worked by Class Members. The numerous and complex issues involved in this action support approval of Class Counsel's attorneys' fee request. *See Tiro,* 2013 WL 4830949, at * 13 (stating that, "The numerous and complex issues involved in this action support approval of Class Counsel's attorneys' fee request.").

### 3. The Risks Of Litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (quotations omitted). "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *Id.* Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Fitapelli Decl. ¶¶ 82-84. There was no guarantee of any recovery whatsoever; if this case had been dismissed on summary judgment, trial or appeal, Class Counsel would have received no payment for their work. *Id.*

As discussed above, class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. *Johnson*, 2011 WL 4357376, at *17.

20

Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* Further, while Plaintiffs believe that they could ultimately establish both liability and damages, the circumstances of this case presented hurdles to a successful recovery and would have created a significant risk to Plaintiffs at trial. Fitapelli Decl. ¶ 41. Thus, Class Counsel's attorneys' fee request is supported by this factor as well. *See Johnson*, 2011 WL 4357376, at *18 (approving request for attorneys' fees in wage and hour class action where continued litigation involved similar risks).

### 4. Quality Of The Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft*, 2007 WL 414493, at *10 (*citing In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004)). Here, Class Counsel have extensive experience representing workers in wage and hour class and collective actions, and this experience was directly responsible for bringing about the positive settlement. Fitapelli Decl. ¶¶ 58-72; *see, e.g., Johnson*, 2011 WL 4357376, at *18 (citing class counsel's experience as one factor supporting an attorneys' fee award of 33 1/3% of the fund). Moreover, Defendants were represented by the firm Jackson Lewis P.C., a large nationwide law firm. *See In re Global Crossing*, 225 F.R.D. at 467 ("[T]he quality of opposing counsel is also important in evaluating the quality of [Class Counsel's] work"). In addition, no Class Members objected to the attorneys' fees or any other part of the settlement, a "reaction … [which] is entitled to great weight by the Court." *Maley v. Del Global Techs.Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002); **Ex. B**, Walsh Decl. ¶¶ 12, 13. As such, this factor weighs in favor of granting the requested fees.

21

### 5.   The Fee Is Reasonable In Relation To The Settlement

Class Counsel's request for one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *McMahon*, 2010 WL 2399328, at *9.  Courts in this Circuit have repeatedly granted requests for one-third of the fund in cases with settlement funds similar to this one. *See, e.g., Lovaglio*, 2012 WL 2775019, at *3 (awarding one-third of the total settlement amount in a wage and hour class action, and stating that "the amount is fair and reasonable," and "consistent with the trend in this Circuit.").  Further, Courts in this Circuit have routinely approved requests for one-third of the fund in cases with settlement funds substantially larger than the present action. *See, e.g., Beckman*, 2013 WL 1803736, at *14 (awarding one-third of $4.9 million fund in wage and hour action, and stating that "the requested fee award appears to be reasonable"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185-86 (W.D.N.Y. 2011) (awarding one-third of $42 million settlement fund).

Class Counsel's fee should be calculated as percentage of the full amount of money that the settlement made available to the class. This is the best measure of what Class Counsel accomplished. The Second Circuit is clear that an "allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (S.D.N.Y. 2007); *see also Yuzary*, 2013 WL 5492998, at *9; *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Sewell*, 2012 WL 1320124. "The value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010); *see Masters*, 473 F.3d at 437 ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and thus

fees should be allocated based on "total funds made available, whether claimed or not."); *Diaz v. Eastern Locating Serv., Inc.,* No. 10 Civ. 04082 (JCF), 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) (finding fee requested reasonable when it was "based on the entire settlement fund, including the amount that will revert to defendants").

### 6.  Public Policy Considerations

In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work"). "Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes." *Matheson*, 2011 WL 6268216, at *8 (citations omitted). "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.* (citations omitted). Consequently, courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Here, Class Counsel successfully negotiated a settlement that obtains significant monetary compensation for Class Members. Fitapelli Decl. ¶¶ 42, 43. These considerations weigh in favor of granting the fee request. *Beckman*, 2013 WL 1803736, at *13 (One third fee

award reasonable where settlement redressed substantial portion of monetary damage suffered by class members and resulted in new policies).

### B.  The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund

"Following *Goldberger,* the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Johnson*, 2011 WL 4357376, at *20 (citation omitted).  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.  *Goldberger*, 209 F.3d at 50; *see also In re Global Crossing*, 225 F.R.D. at 468 (using an "implied lodestar" for the lodestar cross check).

Class Counsel's request for one-third of the Fund is approximately 3.22 times "lodestar". Fitapelli Decl. ¶ 79.  "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 2013 WL 1803736, at *13; *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Yuzary*, 2013 WL 5492998, at *11 (multiplier of "approximately 7.6 times, falls within the range granted by the courts…"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148 (PBS), 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the

lower end of the range of multipliers awarded by courts within the Second Circuit"). Class Counsel's request for $952,233.33 is thus well within the range of reasonableness.

   **C.   Class Counsel Is Entitled To Reimbursement Of Their Litigation Expenses**

   Pursuant to the Settlement Agreement and Class Notice, Class Counsel also seeks reimbursement of $12,883.54 in litigation costs and expenses to be paid from the fund.  Fitapelli Decl. ¶ 81.  "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Matheson*, 2011 WL 6268216, at *9 (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)).  Given that Class Counsel's unreimbursed expenses were incidental and necessary to the representation of the Class, they should be approved. Fitapelli Decl. ¶ 81.

**CONCLUSION**

   For the reasons set forth above, Plaintiffs respectfully request that the Court grant final certification of the Rule 23 Class, approve as fair and adequate the class settlement as set forth in the Settlement Agreement, the FLSA settlement, service awards, and attorneys' fees and costs, and enter the proposed Final Order.

Dated: New York, New York
          February 7, 2014

                                        Respectfully submitted,

                                        /s/ Joseph A. Fitapelli
                                        Joseph A. Fitapelli

                                        FITAPELLI & SCHAFFER, LLP
                                        Joseph A. Fitapelli
                                        Brian S. Schaffer
                                        Frank J. Mazzaferro
                                        475 Park Avenue South, 12th Floor
                                        New York, New York 10016
                                        Telephone: (212) 300-0375

*Attorneys for Plaintiffs and
the Class and Collective*